In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00040-CR
______________________________


DAVID GARCIA, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the Criminal District Court 2
Dallas County, Texas
Trial Court No. F-0055073-MI


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Â Â A jury found David Garcia guilty of aggravated robbery and assessed his punishment at
fifteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice. 
He appeals from this conviction, bringing thirteen points of error. We affirm the judgment of the
trial court.
Factual and Procedural History
Â Â Â Â Â Â Â Â Â Â Â Â Jason Moncier and his cousin Josh visited a gentlemen's club and drank there until the club
closed. The two left the club in Josh's car. Police stopped the vehicle and arrested Josh for driving
while intoxicated. Moncier went to a nearby convenience store to call someone for a ride. He called
a cab company, scheduled a ride, and waited thirty to forty minutes. The cab did not arrive. 
Â Â Â Â Â Â Â Â Â Â Â Â Present at the convenience store were Garcia and Antonio Valla. The two approached
Moncier to inquire as to what he was doing. Moncier informed them of his situation and offered
them $20.00 to give him a ride to Irving. Moncier bought the group soft drinks and got into the back
seat of Garcia's car. Garcia stated he needed to make a stop at his girlfriend's house. On stopping
at a house in a residential neighborhood, Garcia exited the car and Moncier and Valla continued to
talk in the car. Suddenly, Valla pointed a gun in Moncier's face, and Garcia walked to the other side
of the car and opened Moncier's door. Garcia then "stuck something" in Moncier's side and told him
that he and Valla were going to rob him. Garcia took the cash from Moncier's wallet and his cell
phone. Garcia ordered Moncier out of the car, and Garcia and Valla drove off.
Â Â Â Â Â Â Â Â Â Â Â Â Moncier made note of the car's license plate number and wrote it down in nearby mud with
his finger. He then approached the residence in front of which he stood and asked the residents to
call the police. Officer Paul Campopiano of the Dallas Police Department arrived at the scene fifteen
minutes later. Moncier gave him a physical description of Garcia and Valla, described the car in
which they left as "a fairly new blue Toyota Corolla," and gave Campopiano the license plate
number. 
Â Â Â Â Â Â Â Â Â Â Â Â The license plate number belonged to a 1997 Toyota Corolla registered to a member of
Garcia's family. The police took Moncier home and continued to the address at which the suspect's
car was registered. At the residence, a 1997 Toyota Corolla was in the driveway. Garcia's father
answered the police officers' knock and allowed them to enter the house, where they found Garcia
lying in his bed. In Garcia's room, the officers also found approximately ten cell phones. Officer
Campopiano dialed Moncier's cell phone number, and it rang in the room. The officers arrested
Garcia. Later that night, Valla was also arrested. 
Â Â Â Â Â Â Â Â Â Â Â Â Two days later, Dallas police detective Gary Cornett prepared a photographic lineup in which
Moncier identified Garcia. The State charged Garcia with aggravated robbery, to which he pled not
guilty. At trial, the State presented testimony of Moncier, Officer Campopiano, and Detective
Cornett. Garcia did not testify or present any witnesses. Defense counsel requested the jury charge
include a lesser-included offense instruction for both theft and assault. The trial court included the
instruction on the offense of theft, but excluded an instruction on assault. 
Analysis
Aggravated Robbery
Â Â Â Â Â Â Â Â Â Â Â Â A person commits aggravated robbery if he or she commits robbery and (1) causes serious
bodily injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another
person or threatens or places another person in fear of imminent bodily injury or death, if the other
person is sixty-five years of age or older or disabled. Tex. Pen. Code Ann. Â§ 29.03(a) (Vernon
2003).
Legal and Factual Sufficiency of the Evidence
Â Â Â Â Â Â Â Â Â Â Â Â In points of error one and two, Garcia challenges the legal and factual sufficiency of the
evidence on which the jury based its verdict of guilty.
Â Â Â Â Â Â Â Â Â Â Â Â When reviewing the legal sufficiency of the evidence to support a conviction, we must view
the evidence in a light most favorable to the verdict to determine whether a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319 (1979); Cantrell v. State, 75 S.W.3d 503, 508 (Tex. App.âTexarkana 2002, pet.
ref'd). 
Â Â Â Â Â Â Â Â Â Â Â Â When reviewing the factual sufficiency of the evidence to support a conviction, we must
view the evidence in a neutral light and may set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996). We determine whether a neutral review of all the
evidence, both for and against the finding, demonstrates that 1) the proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, or 2) the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. Cantrell, 75 S.W.3d at 510â11.
Â Â Â Â Â Â Â Â Â Â Â Â When a challenge to both legal and factual sufficiency is presented, we first determine
whether the evidence is legally sufficient to support the verdict. Id. at 508. Reviewing the record
in a light most favorable to the verdict, we conclude it reveals sufficient evidence on which a rational
jury could find all the elements of aggravated robbery.
Â Â Â Â Â Â Â Â Â Â Â Â Moncier testified that, while Valla pointed a gun at him and Garcia stuck an object in his
side, the two men took his money and cell phone. Moncier also gave the responding officers
descriptions of the men and the vehicle, including the license plate number. The police used this
information to lead them to Garcia's house, where the car described was in the driveway. At Garcia's
house, the police discovered Moncier's cell phone, among several others. Such a discovery
corroborates Moncier's testimony. Based on this evidence, the jury reasonably could have concluded
beyond a reasonable doubt that Garcia, as principal or as a party, while in the course of committing
theft, intentionally or knowingly threatened and placed Moncier in fear of imminent bodily injury
or death and used or exhibited a deadly weapon during the commission of the offense. The evidence
was, therefore, legally sufficient to support Garcia's conviction.
Â Â Â Â Â Â Â Â Â Â Â Â Reviewing the above evidence and the evidence against the finding of guilt, we conclude the
evidence is also factually sufficient to sustain the conviction. Garcia did not testify or present any
witnesses. At trial, counsel pointed out facts established by the State's case that weigh against the
veracity of Moncier's version of events. Counsel pointed to the fact that no money was ever
recovered and also emphasized that Garcia went into the convenience store with Moncier, that the
men parked the car under a streetlight before robbing him, and that they made a U-turn when leaving
Moncier, allowing him to get a longer look at the vehicle. When we weigh the evidence contrary
to a finding of guilt, we cannot say the result undermines our confidence in the jury's verdict. The
evidence was factually sufficient to support the verdict.
Admission of Detective Cornett's Testimony
Â Â Â Â Â Â Â Â Â Â Â Â In his third point of error, Garcia contends the trial court erred in overruling the objection to
certain statements in Detective Cornett's testimony as inadmissible hearsay. Hearsay is a statement,
other than one made by declarant at trial, offered into evidence to prove the truth of the matter
asserted. Tex. R. Evid. 801(d). Generally, hearsay is inadmissible. Tex. R. Evid. 802. Prior
consistent statements, however, are not characterized as hearsay. Tex. R. Evid. 801(e)(1)(B).
Â Â Â Â Â Â Â Â Â Â Â Â To be admissible under Rule 801(e)(1)(B), first, a prior consistent statement must be
consistent with the declarant's testimony and, second, it must be offered to rebut an express or
implied charge against the declarant of recent fabrication or improper influence or motive. Tex. R.
Evid. 801(e)(1)(B). Further, although the rule does not explicitly require it, a prior consistent
statement must have been made before the alleged improper influence or motive arose. McDuff v.
State, 939 S.W.2d 607, 617 (Tex. Crim. App. 1997); Campbell v. State, 718 S.W.2d 712, 717 (Tex.
Crim. App. 1986). A reviewing court will not disturb a trial court's ruling on the admissibility of
evidence absent an abuse of discretion. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).
Â Â Â Â Â Â Â Â Â Â Â Â At trial, Moncier testified as follows:
Q.[State] So initially you're thinking [Garcia]'s going into the home?
Â 
A.[Moncier] Yeah. I just kind of lost track of him for a second and was
talking to the other guy.
Â 
Q.And when the door opens, you feel Mr. Garcia stick something in your
side?
Â 
A.Yes.
Â 
Q.But you don't see a gun?
Â 
A.I don't see a gun. I don't know what he did. He just stuck something
in my side.
Â Â Â Â Â Â Â Â Â Â Â Â On cross-examination, defense counsel calls into question Moncier's truthfulness and
suggests several times Moncier called the police and fabricated the robbery story to get his cell phone
back and get a ride home after Garcia and Valla had abandoned him on an unsuccessful drug run. 
During cross-examination of Officer Campopiano, defense counsel further implies Moncier is lying. 
More precisely, counsel suggests Moncier told Campopiano he did see a gun held by Garcia:
Q.[Defense counsel] . . . . Now, did the complaining witness tell you
that David Garcia pointed a gun at him?
Â 
A.[Campopiano] Yes, he did.
Â 
Q.Are you aware that he said he didn't about half an hour ago?
Â 
. . . . 
Â 
A.If someone says a guy pointed a gun at me and then he later says he
didn't point a gun at me, would that hurt his credibility a little bit with you?

Â Â Â Â Â Â Â Â Â Â Â Â At a hearing outside the presence of the jury, the trial court held a hearing on the
admissibility of Detective Cornett's testimony. The trial court specifically ruled Cornett's testimony
fell under Rule 801(e)(1)(B), making the testimony admissible as a prior consistent statement. The
pertinent portions of Cornett's testimony are as follows:
Q.[State] Let's just talk about Mr. Garcia and what [Moncier] said about
placing the object in his side.
Â 
A.[Cornett] Okay. While he was sitting in the rear passenger's side of
the vehicle, the defendant approached him, opened the door and placed an object
behind him as he was facing the other direction where the accomplice was holding
a handgun.
Â 
Q.Okay. Was the -- the object placed in his back or in his side?
Â 
A.I believe it was in his side, but --
Â 
Q.Did he ever tell you that he saw David Garcia point a gun at him?
Â 
A.No, ma'am.
Â 
Q.Did he ever say he saw what the object was?
Â 
A.No, ma'am.

Â Â Â Â Â Â Â Â Â Â Â Â On appeal, Garcia now contends that there was no express or implied charge of recent
fabrication or improper influence and also that the State did not show Moncier's statement was made
before an improper influence arose.


 Garcia's argument, that defense counsel did not express or
imply that Moncier had fabricated the story, is without merit. Clearly, from the above excerpts,
defense counsel implied Moncier was lying in general about the robbery and lying specifically about
whether he saw a gun. Defense counsel conceded this point at trial during the discussion of the
admissibility of Detective Cornett's testimony:
THE COURT: . . . . I mean, you definitely made, Mr. Webber, an
expressed, I would say, and certainly and [sic] implied charge that Mr. -- the
complainant -- 
Â 
[Defense counsel]: Moncier.
Â 
THE COURT: -- Moncier is not being truthful --
Â 
[Defense counsel]: Correct.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â . . . . 
Â 
THE COURT: . . . . I think that's the bottom, that's the crux of your
defense is that he's lying.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â [Defense counsel]: Sure. Sure.
Â 
. . . .
Â 
[Defense counsel]: Right. And I agree with that, it's the crux of our
defense.

Â Â Â Â Â Â Â Â Â Â Â Â Second, Garcia argues that the statement the subject of Cornett's testimony was made after
the fabrication or improper influence arose. That is, Garcia contends the State failed to show the
statement was made before the improper influence or motive to fabricate arose. We agree. Garcia
maintains Moncier fabricated the entire story so he could obtain a ride home and get his cell phone
back from Garcia's car. Utilizing this theory, Moncier would have been motivated to fabricate the
story very soon after the two men left him on the street, before Moncier called the police. Therefore,
the statement Moncier made to Cornett later certainly postdated the motive to lie, rendering the
statement outside Rule 801(e)(1)(B). We find the trial court erred in admitting Cornett's consistent
statement.
Â Â Â Â Â Â Â Â Â Â Â Â Error committed by the trial court in the admission of evidence is nonconstitutional error and
thus subject to harm analysis. See Tex. R. Evid. 103(a); Tex. R. App. P. 44.2; King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). We must disregard any error unless it affects the
substantial rights of the individual. Tex. R. App. P. 44.2. Here, Cornett's testimony regarding
whether Moncier told him he saw a gun represents only a fraction of the evidence weighing in favor
of a finding of guilt. The content of Cornett's statement (that Moncier did not say Garcia had a gun)
could be considered as favorable toward Garcia. In light of the amount of evidence properly
admitted which supports the jury's conclusion, we cannot say that admission of Detective Cornett's
testimony was harmful. After examining the entire record, we are assured this error did not influence
the jury or had but a slight effect, and so we will disregard this error.
Admissibility of State's Evidence at Punishment Phase
Â Â Â Â Â Â Â Â Â Â Â Â In his fourth and fifth points of error, Garcia complains the trial court erred in overruling
Garcia's objections to evidence presented by the State at the punishment phase of trial. We review
the trial court's decision to admit evidence at the punishment phase for an abuse of discretion. See
Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996).
Authentication of Juvenile Judgment
Â Â Â Â Â Â Â Â Â Â Â Â First, in point of error number four, Garcia contends the trial court erred in overruling his
objection into evidence of a 1999 juvenile judgment for unlawful carrying of a weapon, labeled
State's Exhibit No. 2, because the document was not properly authenticated and failed to meet the
requirements of Rule 902(4).
Â Â Â Â Â Â Â Â Â Â Â Â A party offering documentary evidence must authenticate the document. Tex. R. Evid. 901. 
Certain documents, however, are self-authenticating. Tex. R. Evid. 902. That is, extrinsic evidence
of the document's authenticity is not required. Parties at trial addressed the certification attached to
the juvenile record at issue in terms of Rule 902(4) only. This rule provides:
Certified Copies of Public Records. A copy of an official record or report or entry
therein, or of a document authorized by law to be recorded or filed and actually
recorded or filed in a public office, including data compilations in any form certified
as correct by the custodian or other person authorized to make the certification, by
certificate complying with paragraph (1), (2) or (3) of this rule or complying with any
statute or other rule prescribed pursuant to statutory authority. 

Tex. R. Evid. 902(4).
Â Â Â Â Â Â Â Â Â Â Â Â After obtaining a supplemental clerk's record regarding this judgment, we find it to be
properly certified by the clerk of the District Court of Dallas County, Texas, as a true and correct
copy of the original as it appears of record in that office. The certificate is given under the hand and
seal of the district clerk which contains a signature, by a deputy clerk, as an attestation or execution
and the seal of the court. We find the document meets the requirements of Rule 902(4) as self-authenticating. 
Â Â Â Â Â Â Â Â Â Â Â Â The trial court did not abuse its discretion in admitting the judgment. We overrule Garcia's
fourth point of error. 
Admissibility of Community Supervision Revocation
Â Â Â Â Â Â Â Â Â Â Â Â In his fifth point of error, Garcia contends that, during the punishment phase, the trial court
erred by admitting evidence of revocation of community supervision in two other cases. Again, we
review the trial court's decision for an abuse of discretion. Mitchell, 931 S.W.2d at 953.
Â Â Â Â Â Â Â Â Â Â Â Â In July 2000, Garcia pled guilty to deadly conduct and burglary of a habitation. He was
sentenced to ten years' community supervision for those convictions. In June 2001, his community
supervision was revoked on each and, at the time of trial for the instant offense, he was appealing
the revocations. Garcia objected to the admissions, contending that, since the revocations were being
appealed at the time, the judgments could not be admitted. Noting that the judgments were not used
for enhancement purposes, the trial court admitted the judgments. 
Â Â Â Â Â Â Â Â Â Â Â Â The Texas Code of Criminal Procedure provides:
[E]vidence may be offered by the state and the defendant as to any matter the court
deems relevant to sentencing, including but not limited to the prior criminal record
of the defendant, his general reputation, his character, an opinion regarding his
character, the circumstances of the offense for which he is being tried, and,
notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of
an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence
to have been committed by the defendant or for which he could be held criminally
responsible, regardless of whether he has previously been charged with or finally
convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, Â§ 3(a)(1) (Vernon Supp. 2004) (emphasis added). Clearly,
the judgments were admissible under Article 37.07. Essentially, Garcia contends the judgments were
inadmissible because they were not final convictions. The plain language of Article 37.07, however,
specifically provides for admission of such evidence. The trial court did not abuse its discretion by
admitting the community supervision revocations at the hearing on Garcia's punishment. We
overrule Garcia's fifth point of error. 
Instruction on Lesser-Included Offense of Assault
Â Â Â Â Â Â Â Â Â Â Â Â In his sixth point of error, Garcia contends the trial court erred in denying his requested
charge instruction on the lesser-included offense of assault. The jury charge included instructions
on aggravated robbery, robbery, and theft, but the trial court did not allow an instruction on assault. 
Â Â Â Â Â Â Â Â Â Â Â Â Either the State or the defendant may request an instruction on a lesser-included offense
when: (1) the lesser-included offense is included within the proof necessary to establish the offense
charged, and (2) some evidence exists in the record that would permit a rational jury to find that, "if
the defendant is guilty, he is guilty only of the lesser offense." Hampton v. State, 109 S.W.3d 437,
440 (Tex. Crim. App. 2003); see Tex. Code Crim. Proc. Ann. art. 37.09.
Â Â Â Â Â Â Â Â Â Â Â Â The State does not dispute that assault is a lesser-included offense of aggravated robbery. 
Thus, we address only whether the record contains evidence that, if Garcia was guilty, he was guilty
only of assault. In making this determination, the trial court should make a determination as to
whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the
defendant is guilty only of that offense, not the greater offense. Rousseau v. State, 855 S.W.2d 666,
672â73 (Tex. Crim. App. 1993). Anything more than a scintilla of evidence is sufficient to entitle
a defendant to a lesser charge. Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001).
Â Â Â Â Â Â Â Â Â Â Â Â A conviction for robbery requires proof of actual or threatened violence to the victim, or
intimidation of such a nature that the victim was put in fear. Tex. Pen. Code Ann. Â§ 29.02(a)(2)
(Vernon 2003). The fear must be of such nature as in reason and common experience is likely to
induce a person to part with his or her property against his or her will. Bignall v. State, 887 S.W.2d
21, 26 (Tex. Crim. App. 1994). A person commits aggravated robbery
[I]f he commits robbery as defined in Section 29.02, and . . . 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â (1) causes serious bodily injury to another;
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â (2) uses or exhibits a deadly weapon; or
Â 
(3) causes bodily injury to another person or threatens or places another
person in fear of imminent bodily injury or death, if the other person is:
Â 
(A) 65 years of age or older; or
Â 
(B) a disabled person.

Tex. Pen. Code Ann. Â§ 29.03(a) (Vernon 2003). A person commits an assault by intentionally,
knowingly, or recklessly causing bodily injury to another. Tex. Pen. Code Ann. Â§ 22.01(a)(1)
(Vernon Supp. 2004).
Â Â Â Â Â Â Â Â Â Â Â Â In order for Garcia to be entitled to an instruction on the lesser-included offense of assault,
there had to be some evidence that, if he was guilty, he was guilty only of assault, not of robbery.
Therefore, to merit an instruction on assault, there had to be some evidence Garcia did not commit
theft, the principal element distinguishing robbery from assault. See Tex. Pen. Code Ann. Â§Â§ 22.01,
29.02. At trial, Garcia argued on the issue of whether he had a gun, not whether he took property. 
Moncier testified Garcia and Valla took his money and his cell phone. The defense called no
witnesses, so there was no testimony to the contrary. Defense counsel suggested that no offense
occurred at all and that the story was a scheme to get his cell phone back after Garcia and Valla
abandoned a drug run. But the attorney's comments are not evidence. Nor would his theory have
suggested Garcia did not take the property. There is no evidence in the record from which a rational
jury could find that Garcia was guilty only of assault and that he did not take Moncier's property. 
We overrule Garcia's contention to the contrary. 
Jury Argument
Â Â Â Â Â Â Â Â Â Â Â Â Garcia also argues the trial court erred in overruling his several objections to the State's jury
argument during both stages of the trial. 
Â Â Â Â Â Â Â Â Â Â Â Â Proper jury argument falls into one of four categories: (1) summation of the evidence;
(2)Â reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) a
plea for law enforcement. Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). To
constitute reversible error, the jury argument must be extreme or manifestly improper or inject new
and harmful facts into evidence. Id.
Â Â Â Â Â Â Â Â Â Â Â Â Garcia's seventh point of error centers around the following exchange:
[State]: . . . . Specifically, a person is criminally responsible for an
offense committed by the conduct of another if acting with intent to promote or assist
in the commission of the offense he solicits, encourages, directs, aids or attempts to
aid the person -- the other person in the commission of the offense. Assisting,
soliciting, encouraging, think back to the evidence you heard. Think about the punch
in the side that [Moncier] told you about.
Â 
[Defense counsel]: I'm going to object. That misstates the evidence
in question.
Â 
THE COURT: Overruled in the sense, ladies and gentlemen of the
jury, you're to decide what the evidence is in this case. You remember what the
witnesses say.
Â 
[State]: Think about the object he felt in his side. It was placed there
by David Garcia.

Â Â Â Â Â Â Â Â Â Â Â Â The statement made by the State about the "punch" in the side was not a verbatim quote from
the testimony. However, the victim's actual statement was Garcia "stuck" something in his side. We
believe that the meaning and general connotation of the two words are very similar and do not find
this argument to be error. We overrule Garcia's seventh point of error.
Â Â Â Â Â Â Â Â Â Â Â Â Garcia's eighth point of error centers on the following statement by the State, "I am really in
awe that Mr. Webber can stand before you and essentially tell you to disregard your oaths to follow
the law." Garcia argues this is a mischaracterization of the defense's argument, stating that it falls
outside the record, is an improper personal opinion, and attempts to attack Garcia through his
counsel.
Â Â Â Â Â Â Â Â Â Â Â Â An appellant may not complain of an allegedly improper argument if he or she invited the
argument of which he or she complains. Ripkowski v. State, 61 S.W.3d 378, 393 (Tex. Crim. App.
2001). Defense counsel in Ripkowski invited the prosecutor's remark regarding the possibility of
change in parole laws when defense counsel requested and received an instruction regarding the
eligibility for parole of one convicted of capital murder and when he presented testimony on the
same subject. Id. at 394. Similarly, here, defense counsel invited the State's statements with his
earlier argument:
[Defense counsel]: . . . . Now he didn't have a deadly weapon. Now
he's a party. This party theory is garbage.
Â 
[State]: Your Honor, it's not a theory. It's the law.
Â 
THE COURT: Well, this is argument, ladies and gentlemen. Just
remember that anything that the attorneys say that is not in harmony with what I've
given you in the court's charge is to be disregarded.
Â 
[Defense counsel]: Yes, sir. 
This party liability is garbage. It's a double-sided coin and it's
garbage. 
Â Â Â Â Â Â Â Â Â Â Â Â Further, the State's statement falls into one of the four proper areas of jury argument. See
Jackson, 17 S.W.3d at 673. Counsel is permitted to respond to the arguments of opposing counsel. 
See id. We conclude the trial court did not err when it overruled Garcia's objection to the State's
argument and overrule his eighth point of error. 
Â Â Â Â Â Â Â Â Â Â Â Â In his ninth point of error, Garcia makes a similar argument regarding the following
exchange, asserting the State's remarks were outside the record:
[State]: . . . . So for Mr. Webber to stand up here as an officer of the
court himself and say, Hey, the law is garbage, please don't follow the law --
Â 
[Defense counsel]: Judge, I'm going to object that I said the law is
garbage in this case. She's misstating what I said. This is the second time she's done
that.
Â 
THE COURT: Overruled.

Â Â Â Â Â Â Â Â Â Â Â Â Similar to the argument presented in his previous point of error, defense counsel invited the
State's response by questioning "party theory" and "party liability" and by labeling them "garbage." 
Therefore, Garcia cannot complain of the invited argument. The State's remark to the jury is directed
as a response to defense counsel's argument and, as such, falls in the category of permissible
argument. Accordingly, we overrule Garcia's point of error. 
Â Â Â Â Â Â Â Â Â Â Â Â In his tenth point of error, Garcia contends the following exchange constitutes an attempt by
the State "to attack defense counsel in an effort to inflame the minds of the jury to the accused's
prejudice." 
[State]: . . . . It is not they back door their case through our witnesses. 
You know, any -- you must recall Mr. Webber's opening statement, everything he
said about the evidence will show X, the evidence will show Y, the evidence will
show Z. Well, please remember there was no evidence to support anything he said
in opening statement.
Â 
[Defense counsel]: Judge, that is way outside the record. It's
improper.
Â 
THE COURT: I disagree. I will overrule the objection.
Â 
[State]: Evidence comes from here. This is the front door. Evidence
does not come from here. That's the back door. You know, I will just throw out a
couple of things. When [Moncier] was on the stand, you told him to take you there
so you could buy drugs, right? He made that up on the spot.
Â 
[Defense counsel]: I'm going to object that that's improper jury
argument.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â THE COURT: Overruled.

Â Â Â Â Â Â Â Â Â Â Â Â Garcia did not specifically argue this was an attack on defense counsel to inflame the jury
at trial. His objection at trial was that the statement was "improper jury argument." Also, defense
counsel objected that the statement was "way outside the record." The complaint on appeal must
comport with the objection lodged at the trial court level. Guevara v. State, 97 S.W.3d 579, 582
(Tex. Crim. App. 2003). To preserve an issue for appeal, an appellant must make a timely and
specific objection at trial. Tex. R. App. P. 33.1. Even if the general objections had preserved this
issue for review, we find Garcia's contentions meritless.
Â Â Â Â Â Â Â Â Â Â Â Â The State's argument that the evidence did not support the defense's contention is a
summation of the evidence and also represents a response to defense counsel's opening argument
regarding what the evidence would show. There is no evidence Moncier wanted to "score some
dope" as stated by defense counsel. Therefore, the State's argument falls within the areas of
permissible jury argument, and we overrule Garcia's tenth point of error.
Â Â Â Â Â Â Â Â Â Â Â Â In his twelfth point of error, Garcia complains of the trial court's overruling of his objection
to the State's jury argument during the punishment stage of trial. Garcia contends the State's
argument referred to facts outside the record and constituted unsworn testimony from the prosecutor. 
The portion of jury argument at issue is as follows:
[State]: . . . . But let's think about something else. This was a very
premeditated act. It's a reasonable deduction from the evidence you heard yesterday
that those individuals saw [Moncier]. They saw that stop. They're sitting in that
parking lot, and they're watching the squad car. You know how people do late at
night and they're running around -- 
Â 
[Defense counsel]: Objection. There is no evidence they were
watching the squad car.
Â 
THE COURT: Overruled.
Â Â Â Â Â Â Â Â Â Â Â Â The State prefaced its argument with the statement that it was a reasonable deduction from
the evidence that Garcia saw the police car and the detention of the vehicle Moncier was occupying.
Â Â Â Â Â Â Â Â Â Â Â Â Counsel is allowed wide latitude without limitation in drawing inferences from the evidence
so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. Gaddis
v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).
Â Â Â Â Â Â Â Â Â Â Â Â We believe this argument does not present error and is allowed as a reasonable deduction
from the evidence presented.
Judgment and Cumulated Sentence
Â Â Â Â Â Â Â Â Â Â Â Â In his eleventh point of error, Garcia maintains that the trial court's judgment and sentence
cumulating the sentence pronounced against him is void because the State failed to present evidence
concerning the alleged prior judgment and sentence or that Garcia was the person there convicted
and sentenced.
Â Â Â Â Â Â Â Â Â Â Â Â When a defendant is convicted of two or more offenses, the trial court, in its discretion, may
assess concurrent or consecutive sentences. Tex. Code Crim. Proc. Ann. art. 42.08(a) (Vernon
Supp. 2004). Although there does not appear to be an express evidentiary requirement for linking
the defendant to a prior conviction, the statute does state the defendant must have been convicted
in two or more cases. Miller v. State, 33 S.W.3d 257, 260 (Tex. Crim. App. 2000). The Texas Court
of Criminal Appeals reads into the statute an implied requirement that the trial court must have
evidence of the prior convictions before it may exercise discretion to cumulate sentences. Id. 
Defense counsel's admissions on the record to the existence of the prior sentences can be sufficient
evidence to support the trial court's cumulation of sentences. See Resanovich v. State, 906 S.W.2d
40, 42 (Tex. Crim. App. 1995). 
Â Â Â Â Â Â Â Â Â Â Â Â First, we note the trial court properly admitted into evidence the two prior felony judgments
with which the trial court cumulated the sentence for the instant offense. This evidence alone is
sufficient to identify the convictions, that is, the court, the sentence, the date, the cause number, and
the nature of the prior convictions. The State also dictated into the record the specifics of each
conviction, naming the offense and the cause number.
Â Â Â Â Â Â Â Â Â Â Â Â The record also reveals ample evidence that connects those convictions to Garcia. When the
records were admitted, defense counsel acknowledged the judgments:
[Defense counsel]: Well, obviously, I didn't know him back in July
of 2000, I didn't plead him guilty on those. I think from my understanding I think
once the notice of appeal period ends, I think that realistically I think he's lost the
right to contest that appeal, . . . .
Â 
THE COURT: Right.
Â 
[Defense counsel]: But the revocation itself is certainly under appeal. 
I guess he could file with that appeal part of it a motion to vacate that plea as an
involuntary plea or I guess some type of jurisdictional error, . . . .

Â Â Â Â Â Â Â Â Â Â Â Â During defense counsel's direct examination of Garcia's mother at the punishment hearing,
defense counsel refers directly to these sentences, further acknowledging the sentences and identity
of the person convicted:
Q.[Defense counsel] And then last year he had two cases where he was
put on one probation for a burglary, a stealing crime, and for deadly conduct, a non-contact felony crime. Do you understand that?
Â 
A.[Witness] Yes.
Â 
Q.Okay. These probations were revoked already because of the
aggravated robbery; is that correct?
Â 
A.Yes.
Â Â 
Garcia's mother discusses the convictions, saying she could not recall the exact date but she knew
"he got probation." She also discussed the facts underlying the two felony convictions for which he
was placed on community supervision, explaining the complainant was a brother of Garcia's
girlfriend. 
Â Â Â Â Â Â Â Â Â Â Â Â Additionally, during closing argument, defense counsel specifically referred to the
convictions: "The other two felonies, shooting the gun, deadly conduct, that's a non-contact felony,
shooting a gun; and the other one is stealing, a burglary." He goes on to explain that the convictions
were already taken into account since Garcia was not eligible for community supervision. 
Â Â Â Â Â Â Â Â Â Â Â Â The copies of the judgments along with defense counsel's acknowledgments on the record
and testimony of the defense witness that Garcia was previously convicted for burglary and deadly
conduct are sufficient evidence of the prior judgments and sentences to support the trial court's
cumulation order, establishing that Garcia was the person convicted and sentenced in the judgments
with which the trial court cumulated sentences. The trial court's decision, therefore, was not an
abuse of discretion. We overrule Garcia's point of error. 
Motion for Mistrial
Â Â Â Â Â Â Â Â Â Â Â Â Finally, point of error thirteen involves the trial court's overruling of Garcia's motion for
mistrial. Garcia contends the trial court erred in overruling his motion for mistrial after the trial
court sustained his objection to the State's jury argument during the punishment phase of trial.
Â Â Â Â Â Â Â Â Â Â Â Â A mistrial is a device used to halt trial proceedings when error is so prejudicial that
expenditure of further time and expense would be wasteful and futile. Wood v. State, 18 S.W.3d
642, 648 (Tex. Crim. App. 2000). An instruction to disregard improper argument generally cures
any prejudicial effect of the improper argument. Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim.
App. 1995). We review a trial court's granting or denial of a motion for mistrial for an abuse of
discretion. Wood, 18 S.W.3d at 648. 
Â Â Â Â Â Â Â Â Â Â Â Â The pertinent portion of the State's jury argument about which Garcia complains is as
follows:
[State]: . . . . Now, there was no -- there was not testimony that
[Garcia] didn't have a gun; it was that [Moncier] did not see him with a gun. But
what do we have -- these should make you feel very good about your verdict. A
weapon's [sic] charge when he's 16 years old, a deadly conduct where he's actually
firing a gun at another person --
Â 
[Defense counsel]: Objection. There's no evidence that he fired a gun
at another person.
Â 
THE COURT: Sustained.
Â 
[Defense counsel]: Judge, I'm going to ask that they be instructed to
disregard that.
Â 
THE COURT: Disregard the last statement. You're free to examine
the document. It's in evidence.
Â 
[Defense counsel]: Judge, I'm going to ask for a mistrial.
Â 
THE COURT: Overruled. 

Â Â Â Â Â Â Â Â Â Â Â Â The State introduced a judgment convicting Garcia of deadly conduct. Included in the exhibit
was the indictment in that case alleging Garcia did "discharge a firearm at and in the direction of Jose
Avila, an individual." The only objection to this exhibit was that the conviction was not final, an
issue previously addressed. Further, defense counsel questioned Garcia's mother: "Q. On this
deadly conduct case for shooting a gun, who is Jose Avila? Do you know? A. Jose Avila, yes the
brother of his girlfriend." Based on the evidence presented in this case, we do not find the State's
argument to be error. Further, the trial court promptly sustained the objection and instructed the jury
to disregard the statement, which we presume the jury followed. We overrule Garcia's thirteenth
point of error.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court.
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â September 25, 2003
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â February 24, 2004

Do Not Publish



cts in the
condition of the house and there is no evidence the Pinnells breached the sales
agreement, the trial court did not err in granting summary judgment to the
Pinnells on Ritcheys breach of contract claims.Â  We reverse in part and affirm in part.Â  We affirm the portion of the summary judgment
rendering the Pinnells a take-nothing judgment on RitcheyÂs breach of contract
claims.Â  We reverse the portion of the
summary judgment concerning statutory real estate fraud and remand for further
proceedings consistent with this opinion.

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice


Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  August
20, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  September
21, 2010

Â 











[1]There
is no evidence that Steve ever claimed the house as his homestead.Â  

Â 





[2]See Tex.
Bus. & Com. Code Ann. Â§ 27.01(a)(1) (Vernon 2009).Â  The reliance and materiality elements of
statutory real estate fraud Âdo not differ from common law fraud.ÂÂ  Fisher
v. Yates, 953 S.W.2d 370, 381 n.7 (Tex. App.ÂÂTexarkana 1997), writ denied, 988 S.W.2d 730 (Tex. 1998)
(per curiam).

Â 





[3]The
trial courtÂs docket sheet indicates a hearing was held on the motion for
summary judgment.Â  The parties have not
provided this Court with a reporterÂs record of the hearing.Â  ÂIn a summary judgment hearing, the trial
courtÂs decision is based upon written pleadings and written evidence rather
than live testimony.ÂÂ  Paselk v. Rabun, 293 S.W.3d 600, 610
(Tex. App.ÂÂTexarkanaÂ  2009, pet.
denied).Â  A reporterÂs record of the
hearing is not necessary in summary judgment proceedings.Â  See
McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 343 n.7 (Tex. 1993); City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 677 (Tex. 1979).





[4]The
Pinnells argue they were not required to make a sellerÂs disclosure.Â  This is incorrect.Â  The Texas Property Code requires, subject to
a few limited exceptions which do not apply here, a number of disclosures,
including whether Âalterations or repairs [have been] made without necessary
permits or not in compliance with building codes in effect at that time.ÂÂ  Tex.
Prop. Code Ann. Â§ 5.008(a), (b), (e) (Vernon Supp. 2010) (this statute
has been amended since the transaction in question, but none of the amendments
are relevant to this appeal); see Myre v.
Meletio, 307 S.W.3d 839, 843 (Tex. App.ÂÂDallas 2010, pet. filed) (ÂIn the
context of a real estate transaction, a seller is under a duty to disclose
material facts that would not be discoverable by the exercise of ordinary care
and diligence by the purchaser, or that a reasonable investigation and inquiry
would not uncover.Â).Â  

Â 





[5]In
her deposition, Ritchey stated that her brother, who is a Âjourneyman master
electrician,Â informed her of the problems.Â 
Whether the summary judgment evidence is sufficient to establish that
the electrical work did not meet code requirements was not challenged by the
Pinnells in their motion for summary judgment.Â 
The Pinnells do not contest that repairs were made without necessary
permits.

Â 





[6]The
Pinnells argued in their motion for summary judgment that the water heaterÂs
location is no evidence of a defect.Â 
Ritchey admitted the water heater is in the same location it was when
she purchased the house.Â  

Â 





[7]In
her summary judgment affidavit, Ritchey states her request for a certificate of
occupancy was refused.Â  In their
appellate brief, the Pinnells argue Ritchey did not request a certificate of
occupancy until after she had already filed suit.Â  The record citation provided does not support
this allegation, and we have not found any evidence in the record concerning when
Ritchey requested a certificate of occupancy.





[8]Prudential concerned a commercial real
estate transaction where the building was later found to contain asbestos.Â  Prudential
characterizes Âas isÂ clauses as Âfacts which negate proof of causation
required for recovery.ÂÂ  Prudential, 896 S.W.3d at 164.Â  The court reasoned, by agreeing to an Âas isÂ
clause, the buyer disclaims the existence of any express or implied warranties,
agrees to make his or her own assessment of the bargain, and accepts the risk
that the buyerÂs own assessment may be wrong.Â 
Id.Â  Thus, a valid enforceable Âas isÂ clause
negates as a matter of law the possibility that the sellerÂs conduct will cause
him or her damage.Â  Id.Â  The Texas Supreme Court,
however, noted that not all Âas isÂ clauses are valid and enforceable.Â  The court cautioned that an Âas isÂ clause is
not enforceable if the seller induced the buyer to enter into the contract by a
fraudulent representation or if the seller engaged in conduct that impaired,
obstructed, or interfered with the buyerÂs inspection of the property.Â  Id. at
160Â62.Â  The Texas Supreme Court held
that a fraudulent representation occurs when Âthe maker knew it was false when
he made it or made it recklessly without knowledge of the truth.Â Â Id. at 163.Â  Distinguishing misrepresentations from a
failure to disclose, the Texas Supreme Court held a party is not liable for
failing to disclose a defect unless the party had actual knowledge of the
defect. Â Id. Â Finally, other aspects of a transaction may
make an Âas isÂ agreement unenforceable.Â 
The court should inquire whether the clause Âis an important part of the
basis of the bargain, not an incidental or Âboiler-plateÂ provision, and is
entered into by parties of relatively equal bargaining position.ÂÂ  Id.
at 162; see Kupchynsky v. Nardiello, 230 S.W.3d 685, 691 (Tex. App.ÂÂDallas
2007, pet. denied).





[9]RitcheyÂs
motion for new trial suggests that the Pinnells argued the Âas isÂ clause bars
recovery for statutory real estate fraud to the trial court at the hearing on
the motion for summary judgment.Â  As
noted above, we do not have a reporterÂs record of the hearing on the motion
for summary judgment.Â  





[10]Statutory
real estate fraud requires actual awareness to recover exemplary damages.Â  Tex.
Bus. & Com. Code Ann. Â§ 27.01(c).Â 
Because actual knowledge is not required to recover actual damages, it
is not necessary for us to decide whether there is some evidence of actual
knowledge.

Â 





[11]Under
certain circumstances, though, an implied warranty cannot be waived.Â  See
Centex Homes v. Buecher, 95 S.W.3d
266, 274Â75 (Tex. 2002) (implied warranty of habitability Âcan be waived only
to the extent that defects are adequately disclosedÂ); Humber v. Morton, 426 S.W.2d 554, 555 (Tex. 1968) (recognizing an
implied warranty of habitability for new homes sold by builder); Ritchey does
not allege this transaction created implied warranties which could not be
waived.

Â 





[12]We
note Â[t]he acts of a party may breach duties in tort or contract alone or
simultaneously in both.ÂÂ  Jim Walter Homes, Inc. v. Reed, 711
S.W.2d 617, 618 (Tex. 1986).Â  The
applicability of the Âas isÂ clause to a tort claim, under Prudential, 896 S.W.2d at 162, differs from its applicability to a
breach of contract claim.Â  We have not
addressed whether the Âas isÂ clause would bar recovery for a tort claim such
as statutory real estate fraud.Â