In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00014-CR


______________________________




FRANKLIN CANTRELL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 359th Judicial District Court


Montgomery County, Texas


Trial Court No. 99-04-20567-CR






 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N


 In our opinion dated May 22, 2001, we affirmed Franklin Cantrell's conviction for theft of
fiduciary property. On review, the Court of Criminal Appeals reversed our judgment and remanded
the case for us to address Cantrell's legal sufficiency argument set out in his point five. We did
address legal sufficiency in our original opinion and found the evidence legally sufficient to support
the conviction. We did not specifically address Cantrell's fifth point, which contended the evidence
is legally insufficient to prove that the stolen money was owned by Mitchell Energy. We will now
address that specific issue in this opinion.

 A jury convicted Franklin Cantrell of criminal conspiracy to misapply fiduciary property.
Tex. Pen. Code Ann. § 15.02 (Vernon 1994), § 32.45 (Vernon Supp. 2001). The jury assessed his
punishment at five years in prison, probated for ten years, and a $10,000.00 fine. Additionally, the
trial court ordered Cantrell to pay $370,000.00 in restitution as a condition of his community
supervision. On appeal, Cantrell challenges both the legal and factual sufficiency of the evidence
to support the conviction. Cantrell also alleges that the trial court committed reversible error by
constructively amending the indictment, violating due process of law, and that the restitution order
requiring Cantrell to pay $370,000.00 is erroneous. We overrule each of Cantrell's points of error
and affirm the judgment of the trial court.

 In early 1987, Gulf States Utilities (GSU) sought a gas supplier to enter into a "swing"
contract arrangement. (1) Sabine Gas Transmission Company. (Sabine) (2) agreed to enter into this
"swing" arrangement with GSU. Sabine did not have its own supply of gas, so in order to meet
GSU's requirements Cantrell, then president of Sabine, entered into a gas supply contract, 

GS-108, (3) with Kenneth Patterson, senior vice president of Winnie Pipeline (Winnie). (4) The contract
stipulated that Winnie would supply gas to Encon/Sabine (ES) at the producer price index,
commonly referred to as AIP, (5) plus fifteen cents per "Million British Thermal Units" or MMBTU. (6) 
ES then resold the gas to GSU pursuant to their previous swing contract arrangement. Before
entering into the GS-108 contract with Winnie, Cantrell was referred to Patterson by Navarro
Crowson (Crowson), a former employee of Winnie. Patterson eventually met with Cantrell
regarding supplying ES with gas to fulfill its agreement with GSU. As a result of the contract
between ES and Winnie, Crowson was paid a commission of five cents per MMBTU, or unit of gas
sold. (7) Crowson, after deducting for federal income taxes, paid one half of the remaining commission
to Patterson. In August 1992, Cantrell was subpoenaed to appear in federal court and testify in a
proceeding brought by Mitchell Energy to recover monies from Crowson. Cantrell was eventually
indicted on April 27, 1999, for criminal conspiracy of misapplication of fiduciary property and was
convicted on September 22, 1999. 

 On appeal, Cantrell attacks both the legal and factual sufficiency of the evidence to support
the conviction. Legal and factual challenges to the sufficiency of the evidence require the use of
separate and distinct standards. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). A legal
sufficiency review requires us to view the relevant evidence in the light most favorable to the verdict. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Johnson v. State, 23
S.W.3d at 7; Hines v. State, 978 S.W.2d 169, 172 (Tex. App.-Texarkana 1998, no pet.). In contrast,
a factual sufficiency review requires that we view the evidence in a neutral light that favors neither
party. Johnson v. State, 23 S.W.3d at 7.

 When a challenge to both legal and factual sufficiency is presented, we first determine
whether the evidence is legally sufficient to support the verdict. Clewis v. State, 922 S.W.2d 126,
135 (Tex. Crim. App. 1996); Hines v. State, 978 S.W.2d at 172. If we find the evidence legally
insufficient, we must reverse the judgment and render a judgment of acquittal. Gaffney v. State, 937
S.W.2d 540, 541 (Tex. App.-Texarkana 1996, pet. ref'd). If we find the evidence factually
insufficient, we reverse the judgment and remand the cause to the trial court for a new trial. The
standard for reviewing the sufficiency of the evidence is the same for cases involving direct or
circumstantial evidence. Jackson v. State, 672 S.W.2d 801, 803 (Tex. Crim. App. 1984).

 A legal sufficiency review requires us to view the relevant evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 319;
Johnson v. State, 23 S.W.3d at 7; Hines v. State, 978 S.W.2d at 172. An inquiry into legal
sufficiency does not require us to ascertain whether we believe the evidence at trial established guilt
beyond a reasonable doubt. Gaffney v. State, 937 S.W.2d at 541. If there is any evidence that could
establish guilt beyond a reasonable doubt, the conviction will not be reversed for legal insufficiency. 
Hines v. State, 978 S.W.2d at 172. This Court positions itself as a final due process safeguard to
ensure the rationality of the fact finder. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App.
1988); Hines v. State, 978 S.W.2d at 172.

 Cantrell contends there is legally insufficient evidence to show that he knowingly conspired
to misapply fiduciary property. Under Tex. Pen. Code Ann. § 15.02, a person commits criminal
conspiracy if, with the intent that a felony be committed: (1) he agrees with one or more persons to
engage in conduct that constitutes the offense; and (2) he or one or more of them performs an overt
act in pursuance of the agreement. Moreover, a person commits the felony of misapplication of
fiduciary property if he intentionally, knowingly, or recklessly misapplies property he holds as a
fiduciary in a manner that involves substantial risk of loss to the owner of the property or to the
person for whose benefit the property is held. Tex. Pen. Code Ann. § 32.45. Under § 32.45, the
term "misapply" means to deal with property contrary to an agreement under which the fiduciary
holds the property or a law prescribing the disposition of the property. Tex. Pen. Code Ann. §
32.45(2)(A), (B).

 The State presented testimony at trial that Patterson signed a "conflict of interest" policy that
prohibited him from entering into transactions against the interest of Mitchell Energy, owner of
Winnie, for his own personal gain. The State used evidence of this policy as the agreement
necessary to establish a fiduciary relationship between Patterson and Winnie. Additionally, the State
produced evidence that Cantrell sought to negotiate a lower price for ES from Winnie under the 

GS-108 contract by promising to give Patterson one half of the commissions allocated for Crowson. 
This scheme effectively lowered the amount of money Winnie could demand for its gas, (8) while
enriching Patterson, Cantrell, and Crowson in violation of Patterson's fiduciary duty to Winnie. 

 Cantrell contends that he did not knowingly agree with Crowson or Patterson to engage in
conduct constituting misapplication of fiduciary property. The essential element of criminal
conspiracy is an agreement to commit a crime. See Williams v. State, 646 S.W.2d 221, 222 (Tex.
Crim. App. 1983). According to Cantrell, because the State produced no evidence that he made an
agreement with Crowson and Patterson, the conspiracy allegation must fail. However, under Tex.
Pen. Code Ann.§ 15.02, an agreement may be inferred from the acts of the parties. See Cuellar v.
State, 13 S.W.3d 449, 453 (Tex. App.-Corpus Christi 2000, no pet.). Moreover, because
conspirators' work is often clandestine in nature, direct evidence is not required to support a
conviction for criminal conspiracy; circumstantial evidence will suffice. Butler v. State, 758 S.W.2d
856, 860 (Tex. App.-Houston [14th Dist.] 1988, no pet.). 

 The bulk of the evidence against Cantrell is from the testimony of his alleged co-conspirators, Crowson and Patterson. (9) Both testified that Cantrell directed the conspiracy. 
Additionally, Crowson testified that Cantrell knew that Crowson was paying Patterson to influence
the lower price offered by Winnie to ES under the GS-108 contract. Furthermore, Crowson testified
that he spoke with Cantrell about deducting one half of Crowson's commissions from Randy
Stevens', (Patterson's son-in-law and an employee of ES), salary expenses and passing that half of
the commissions on to Patterson. Patterson's testimony substantiated this commission deduction
scheme. 

 A conviction may not be based on the testimony of an accomplice witness unless the
accomplice's testimony is corroborated by other evidence tending to connect the accused to the
offense. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). Contrary to Cantrell's assertion,
we do not review the legal and factual sufficiency of corroborative evidence. Cathey v. State, 992
S.W.2d 460, 462-63 (Tex. Crim. App. 1999), cert. denied, 528 U.S. 1082, 120 S.Ct. 805, 145
L.Ed.2d 678 (2000). Rather, to determine whether an accomplice's testimony is sufficiently
corroborated, we eliminate from consideration the testimony of the accomplice witness and examine
the remaining evidence to ascertain whether there is evidence that tends to connect the accused to
the offense. Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); Cockrum v. State,
758 S.W.2d 577, 581 (Tex. Crim. App. 1988). The combined cumulative weight of the
incriminating evidence furnished by the nonaccomplice witnesses is sufficient if it tends to connect
the accused to the offense. Reed v. State, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). It is not
necessary that the corroborative evidence directly link the accused to the offense or be sufficient in
itself to establish guilt beyond a reasonable doubt. 

 ES's own records sufficiently corroborate the testimony of both Crowson and Patterson. 
From April 1989 to December 1990, Crowson's commission was reduced by an amount that was
exactly one half of Stevens' salary. Not only does this evidence corroborate the testimony of
Crowson and Patterson, it also tends to connect Cantrell to the misapplication of fiduciary funds. 
On a legal sufficiency challenge, we do not assess the evidence as a whole, but only examine the
evidence most favorable to the verdict. Viewed from that perspective, the evidence is legally
sufficient to support the verdict.

 In his point five, Cantrell contends there is legally insufficient evidence to show that the
money Cantrell and Patterson diverted from the gas wells was property owned by Mitchell. Winnie
was a subsidiary of Mitchell. Evidence that Cantrell and Patterson concocted a scheme whereby part
of the money that Mitchell would otherwise receive from the gas sales was diverted to Cantrell,
Patterson, and Crowson is legally and factually sufficient to show that Cantrell and the other parties
took money that Mitchell would have acquired if there had been no conspiracy. Because Mitchell
was the equitable owner of the diverted funds, they constituted fiduciary funds that were misapplied
by Cantrell and others.

 The courts of appeals are constitutionally empowered to review the judgment of the trial
court to determine the factual sufficiency of the evidence used to establish the elements of an
offense. Johnson v. State, 23 S.W.3d at 6. In determining factual sufficiency, we view all the
evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Id. at 7 (quoting Clewis v. State, 922
S.W.2d at 129); Hines v. State, 978 S.W.2d at 172. We review the evidence that tends to prove the
facts in dispute and compare it with the evidence that tends to disprove those facts. In conducting
a factual sufficiency review, we have the authority to disagree with the fact finder's determination. 
Our review must be appropriately deferential to avoid substituting our judgment for that of the fact
finder. Hines v. State, 978 S.W.2d at 172. Our evaluation should not intrude on the fact finder's role
as the sole judge of the weight and credibility given to witness testimony.

 The appropriate scope of a criminal factual sufficiency review encompasses both
formulations used in civil jurisprudence. Johnson v. State, 23 S.W.3d at 11. The evidence is
factually insufficient if it is so weak as to be clearly wrong and manifestly unjust, or if the finding
is against the great weight and preponderance of the evidence. The complete and correct standard
this Court must follow in conducting a factual sufficiency review of the elements of a criminal
offense asks whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.

 The main contention advanced by Cantrell in his factual sufficiency challenge is that the

GS-108 contract was signed in May 1988, while the indictment avers that the alleged conspiracy
commenced in January 1986. Cantrell contends that this fact alone undermines the existence of the
alleged conspiracy. However, the State produced evidence that Cantrell had engaged in a similar
scheme in 1986. This evidence demonstrated that ES was tapped to acquire gas for GSU. To this
end, Cantrell arranged for Winnie to supply gas to Ladd Petroleum, which in turn would sell the gas
to GSU. This arrangement required ES to pay Crowson a commission, which he in turn shared with
Patterson to influence the deal between Winnie and Ladd. ES received fifteen cents per MMBTU
sold to GSU by Ladd. 

 We disagree with Cantrell's contention that the evidence is factually insufficient. As noted
earlier, the main issue challenged by Cantrell on appeal is whether the State proved beyond a
reasonable doubt that he knowingly conspired with Crowson and Patterson to misapply fiduciary
funds. Cantrell has not provided conclusive or overwhelming evidence that would discredit the
jury's finding. The jury is the sole judge of the weight and credibility of the evidence. As such, it
had the right to find the combined testimony of Crowson and Patterson more compelling than the
testimony of Cantrell. In conducting a factual sufficiency review, we must examine the complete
record. In our neutral consideration of the entire record, we cannot conclude that the jury's finding
is against the overwhelming weight of the evidence.

 Cantrell also contends that the trial court committed reversible error by "constructively
amending" the indictment in violation of the due process guarantees of the United States and Texas
Constitutions. The indictment avers that Cantrell and Crowson did "intentionally, knowingly, and
recklessly misappl[y] fiduciary property, namely money, that the said defendants held as fiduciar[ies]
and as persons acting in a fiduciary capacity. . . ." Cantrell argues that since he was not shown to be
a fiduciary of the funds at issue, he should not have been convicted simply by evidence showing that
Patterson breached his fiduciary duty to Winnie. Additionally, Cantrell contends that the jury could
not properly convict him as a party to Patterson's offense of misapplication of fiduciary funds
because no such theory was alleged in the indictment. We disagree. This argument misinterprets the
current Texas law of parties contained in Tex. Pen. Code Ann. § 7.01(c) (Vernon 1994). (10) 

 In Crank v. State, 761 S.W.2d 328, 352 (Tex. Crim. App. 1988), overruled on other grounds
by Alford v. State, 866 S.W.2d 619 (Tex. Crim. App. 1993), the Texas Court of Criminal Appeals
commented on its previous rejection of an argument similar to Cantrell's in the context of a capital
murder prosecution. In that case, the appellant filed written objections to the trial court's charge
alleging that inclusion of a law of parties theory in the court's charge when none had been in the
indictment constituted an impermissible amendment of the indictment in violation of due process. 
The Court of Criminal Appeals held that a party to an offense may be charged with that offense
without alleging in the indictment the facts that make him a party to the offense. (11) More recently
Judge Keller stated, "an indictment authorizes conviction on the law of parties even though the
indictment's wording indicates that the defendant personally committed the criminal acts alleged."
Planter v. State, 9 S.W.3d 156, 162 (Tex. Crim. App. 1999) (Keller, J., dissenting). Moreover, we
held in Marable v. State, 990 S.W.2d 421 (Tex. App.-Texarkana 1999, no pet.), that the court
properly charged the jury on the law of parties even though the state failed to include such a
statement in the indictment. Accordingly, although the indictment at issue only alleged personal
liability on the part of Cantrell, it also implicitly alleged liability as a party. 

 Finally, Cantrell contends that the restitution of $370,000.00 ordered by the trial court as a
condition of community supervision is erroneous and without any factual basis in the record. (12) We
review challenges to restitution orders under an abuse of discretion standard. Cartwright v. State,
605 S.W.2d 287, 288-89 (Tex. Crim. App. [Panel Op.] 1980). A trial court abuses its discretion
when it acts in an arbitrary or unreasonable manner. Montgomery v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990). 

 There are three restrictions on the restitution a trial court may order. First, the amount must
be just and must be supported by a factual basis within the loss suffered by the victim. Second, the
restitution ordered must be for the offense for which the defendant is criminally responsible. Third,
restitution is proper only for the victim or victims of the offense with which the offender is charged. 
A trial court's failure to abide by these guiding rules is an abuse of discretion.

 Mitchell/Winnie lost approximately $15,000,000.00 in revenue because of the lower price
Mitchell/Winnie received for the gas as a result of the conspiracy. Additionally, the evidence shows
that Patterson received $740,000.00 in commissions during this scheme. The trial court apparently
used this $740,000.00 figure to decide that Cantrell should pay one half or $370,000.00. Although
the trial court stated that the amount of restitution he selected was "arbitrary" in relation to the multi-million dollar amount at issue, we find that, in light of the total loss suffered by Mitchell/Winnie,
it is not arbitrary in the legal sense so that it was applied without reference to a guiding rule or
principle. Therefore, it was not an abuse of discretion. 

 For the reasons stated, we affirm the judgment of the trial court.



 William J. Cornelius

 Chief Justice


Date Submitted: January 30, 2002

Date Decided: January 31, 2002


Publish

1. This "swing" contract was new to the gas industry and unusual. Instead of the commonly
used "take or pay" provisions, where a buyer like GSU was required to purchase gas regardless of
its needs, this arrangement allowed a gas supplier to commit to provide a percentage of GSU's gas
needs.
2. Energy Consultants, Inc. (Encon) later became intermingled with Sabine. The resulting
entity became known as Encon/Sabine in the industry.
3. GS-108 was entered into on May 1, 1988.
4. Winnie was a subsidiary of Mitchell Energy & Development Corporation.
5. The index is a weighted average of gas sold in a given month formulated by an energy
consulting group.
6. A unit of measurement of gas.
7. Cantrell admitted that ES had agreed to pay Crowson a broker fee for arranging GS-108.
8. The evidence suggests that under the GS-108 contract, Winnie's gas was sold at fifteen cents
less than it was resold by ES. In light of this decrease of fifteen cents per unit of gas sold, Winnie
lost approximately $15,000,000.00. 
9. Both Crowson and Patterson had previously pleaded guilty to misapplication of fiduciary
property. 
10. Tex. Pen. Code Ann. § 7.01(c) (Vernon 1994) states in pertinent part:

 All traditional distinctions between accomplices and principals are abolished by this
section, and each party to an offense may be charged and convicted without alleging
that he acted as a principal or accomplice.
11. In Crank the court held that the law of parties need not be contained in the indictment
stating, "If the evidence supports a charge on the law of parties, the court may charge on the law of
parties even though there is no such allegation in the indictment or information." Crank v. State, 761
S.W. 2d at 352.
12. There is no dispute that the trial court was within its lawful authority to require restitution
to Mitchell/Winnie as a condition of community supervision. See Tex.Crim. Proc.Code Ann. art.
42.12, § 11(a)(20), (b) (Vernon Supp. 2001); Martin v. State, 874 S.W.2d 674, 682 (Tex. Crim.
App. 1994) ("trial judge's authority to order restitution requires only: (1) that there be a factual basis
in the record to conclude the defendant is liable for the criminal conduct. . . . and (2) that there be
a factual basis to determine the amount of restitution.").