COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-224-CR
 
 
SANDRA PLUMMER PUCHER                                                  APPELLANT
 
V.
  
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM CRIMINAL DISTRICT COURT 
NO. 2 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
        Appellant 
Sandra Plummer Pucher appeals her conviction for conspiracy to commit theft. See 
Tex. Penal Code Ann. § 15.02 
(Vernon 2003), § 31.03 (Vernon Supp. 2004). In four points, she contends that 
the evidence is legally insufficient to support the conviction and that the 
trial court abused its discretion in denying her motion to suppress, admitting 
110 of the State’s exhibits into evidence, and overruling her objection to the 
State’s jury argument. We affirm.
Legal Sufficiency
        In 
her first point, appellant contends that the evidence is legally insufficient to 
support her conviction. Appellant’s husband, Thomas Pucher, stole 
approximately $2.8 million from Burlington Resources by creating a fake company, 
which submitted false invoices that were paid by Burlington Resources.[2]  The evidence at trial details his actions, which 
began in 1994 and continued until Burlington Resources discovered the crime in 
September 2000. Appellant and Pucher were married in 1997.
        Appellant 
does not contend that the evidence is insufficient to show that her husband 
stole the money.  Instead, she contends the evidence is insufficient to 
prove that she made an agreement with him to steal some of the money.
        A 
person commits criminal conspiracy if, with the intent that a felony be 
committed, she (1) agrees with one or more persons that one or more of them will 
engage in conduct that constitutes the offense and (2) one or more of them 
performs an overt act in furtherance of the agreement.  Id. § 
15.02(a); Cantrell v. State, 75 S.W.3d 503, 508 (Tex. App.—Texarkana 
2002, pet. ref’d).  The essential element of a conspiracy is an agreement 
to commit a crime. Cantrell, 75 S.W.3d at 509.  If the evidence 
shows there was no actual, positive agreement to commit a crime, it is 
insufficient to support a conspiracy conviction. Walker v. State, 828 
S.W.2d 485, 487 (Tex. App.—Dallas 1992, pet. ref’d).  However, an 
agreement may be inferred from the acts of the parties.  Tex. Penal Code Ann. § 15.02(b); Cantrell, 
75 S.W.3d at 509.  Because a conspiracy is typically clandestine, direct 
evidence of an agreement is not necessary to support a conviction; 
circumstantial evidence will suffice. Cantrell, 75 S.W.3d at 509.
        The 
evidence shows that appellant met Pucher in 1994 through her work selling 
audiovisual equipment to Burlington Resources.  Appellant and Pucher 
started dating about a year after they met. During part of the time appellant 
and Pucher were dating, Pucher lived in a modest duplex, which appellant helped 
decorate.  He later lived in a modest home before moving in with 
appellant.  Appellant owned her own home on Eagle Court in Bedford, on 
which she carried a mortgage.
        Appellant 
and Pucher became engaged in 1995.  In September 1997, appellant was 
terminated from her employment and began receiving unemployment 
compensation.  While she was unemployed, in November 1997, she purchased a 
home on Norwood Drive in her name for $280,000.  She paid $62,478.16 from 
her personal bank account to the title company at closing and obtained $224,000 
in financing.  At the time, she had only enough money in her bank account 
to make payments on the home for eight or nine months.  Neither she nor 
appellant sold the homes they owned.  The balance on appellant’s mortgage 
on the Eagle Court home was $113,000.  Included with appellant’s loan 
application was a copy of a lease between her and Pucher for $1,700 per month 
for the Eagle Court home; however, there is no evidence that Pucher ever lived 
at the Eagle Court home or that he paid rent to appellant in accordance with the 
lease.  The evidence does show that Pucher moved into the Norwood home a 
few days after November 21, 1997, the day of the closing.
        While 
appellant indicated on her mortgage application that she was employed, and the 
bank’s records indicate it verified her employment as of November 7, 1997, the 
evidence shows that she received unemployment compensation for that time.  
The evidence further shows that appellant told a Tarrant County criminal 
investigator in October 2000 that she had been unemployed since September 1997.
        After 
appellant purchased the Norwood home, Pucher deposited $34,400 of the stolen 
money into her personal bank account on December 1, 1997.  Appellant and 
Pucher were married December 20, 1997.  On March 2, 1998, Pucher deposited 
$60,000 of the stolen money into appellant’s bank account.
        While 
appellant and Pucher were married, appellant wrote some checks for payments on 
the Norwood house from a joint account that she opened with $12,000 of the 
stolen money given to her by Pucher.  She also made payments from the joint 
account for loan payments on the Eagle Court home and wrote herself checks for 
cash.  Appellant and Pucher paid off the loan for the Norwood home in less 
than two years, making a total of $317,086 in payments from either their joint 
bank account, Pucher’s own bank account, or the account for Pucher’s fake 
company.  A forensic investigator who reviewed appellant’s and Pucher’s 
accounts testified that between October 1997 and August 16, 1999, when the loan 
on the Norwood home was paid off, he could find no wages deposited in any bank 
accounts that were used to make house payments.  All payments for the 
Norwood home, other than the earnest money and down payment for which Pucher 
reimbursed appellant from the stolen funds, were made with the stolen money.
        The 
evidence further shows that during appellant’s marriage to Pucher, appellant 
was unemployed, and Pucher never made more than $40,000 a year at his job at 
Burlington Resources.  However, during the same time, the couple purchased 
in full the Norwood home, approximately 14 acres of unimproved real property in 
Keller for $283,689,[3] and a 50-foot yacht.[4]   They also rented a slip and furnished 
apartment at High Point Marina on Lake Texoma.  In addition, when the 
police searched the Norwood home, they found approximately $24,840 in cash, 
which neither appellant nor Pucher appeared surprised about.  The couple 
also submitted a contract to purchase a 3,471 square foot home in Hawaii for 
$400,000 cash, with no financing, plus repair costs of $187,465.  The 
seller never accepted the contract, however.
        Appellant 
contended at trial that she thought Pucher was independently wealthy and she did 
not know the source of the money they were spending.  Appellant told her 
son that Pucher had a trust fund.  However, Pucher had told his boss that 
his wife was wealthy from a prior marriage.  He also told his father that 
appellant was quite a good salesperson and made about $130,000 per year at her 
job.
        Pucher’s 
father testified that when he asked appellant if she knew where the money was 
coming from, she said no, but she indicated to him that she made a lot of money 
at her job, and he thought that’s where their lifestyle came from.  
Pucher’s father also testified that appellant told him she received an 
inheritance from her aunt.
        Pucher 
testified that appellant did not know anything about the stolen money, that he 
did not tell her about it, and that the two did not agree that he would steal 
the money.  He said that while they were dating and engaged, he bought 
boats, jet skis, motorcycles, and a recreational vehicle with some of the stolen 
money and with money that vendors of Burlington Resources paid him on the side 
to give them business.  However, the evidence shows that the amount of 
money Pucher stole from Burlington Resources increased significantly after he 
married appellant.
        Viewing 
the evidence in the light most favorable to the verdict, and presuming that the 
jury resolved any conflicting inferences in favor of the prosecution,[5] we hold that the evidence is legally sufficient to support 
appellant’s conviction.  We overrule appellant’s first point.
        In 
her second point, appellant contends that the trial court abused its discretion 
by denying her motion to suppress (a) several items[6] 
seized during the search of the Norwood home because they were not named in the 
search warrant and (b) items seized during a search of other real property owned 
by appellant because part of the affidavit accompanying the search warrant 
incorrectly identified the address of the property.  See Tex. Code Crim. Proc. Ann. arts. 
18.01(c)(2), 18.02 (Vernon Supp. 2004).
        The 
search warrant for the Norwood home authorized the seizure of (a) a computer and 
related equipment that the officers believed was used to generate the fake 
invoices and (b) other evidence of the offense, such as bank records.  See 
id. art. 18.02(9), (10).  Although the complained-of items were not 
named in the search warrant, they were discovered in areas where the police were 
lawfully present by virtue of the search warrant, and are of a nature that would 
lead a reasonable person to believe they may be useful as evidence of the crime 
alleged in the affidavit accompanying the search warrant.  See Joseph v. 
State, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991); Zarychta v. State, 
44 S.W.3d 155, 166 (Tex. App.—Houston [14th Dist.] 2001, pet. 
ref’d), cert. denied, 535 U.S. 1105 (2002); State v. Young, 8 
S.W.3d 695, 698-700 (Tex. App.—Fort Worth 1999, no pet.).  Thus, we hold 
that the trial court did not abuse its discretion in denying appellant’s 
motion to suppress the evidence found in the Norwood home.
        While 
the last paragraph of the affidavit supporting the search warrant for the other 
real property incorrectly identifies the address of the property as 
appellant’s residence, the first paragraph of the affidavit describes the real 
property with the correct address and a plat description.  Furthermore, the 
search warrant correctly identifies the property to be searched.  See 
Etchieson v. State, 574 S.W.2d 753, 759 (Tex. Crim. App. 1978) (op. on reh'g) 
(holding that minor discrepancies in property description will not vitiate 
search warrant), cert. denied, 440 U.S. 936 (1979); see also Ramos v. 
State, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996) (stating that adequacy 
of affidavit to support issuance of search warrant depends on totality of 
circumstances), cert. denied, 520 U.S. 1198 (1997).  We overrule 
appellant’s second point.
        In 
her third point, appellant complains about the trial court’s admission of 110 
of the State’s exhibits on the ground that they are substantially more 
prejudicial than probative.  See Tex. R. Evid. 403. Appellant does not 
contend that all the exhibits are similar or that they are all more prejudicial 
than probative for the same reason.  Appellant appears to argue that the 
exhibits are not relevant as circumstantial evidence of her guilt because the 
other evidence against her is insufficient. We overrule appellant’s third 
point as multifarious.[7] See Foster v. State, 
101 S.W.3d 490, 499 (Tex. App.—Houston [1st Dist.] 2002, no pet.).
        In 
her fourth point, appellant contends the trial court erred in overruling her 
objection to the State’s jury argument that “we [the State] don’t have to 
prove [an] express agreement, we don’t have to prove a written 
agreement.”  After appellant objected, the prosecutor clarified his 
argument by saying that the State did not have to prove a written 
agreement.  The trial court overruled the objection.  The agreement 
element of conspiracy may be inferred from the acts of the parties; the State 
need not introduce direct evidence of the agreement.  See Tex. Penal Code Ann. § 15.02(b); Cantrell, 
75 S.W.3d at 508. Thus, the trial court did not err by overruling appellant’s 
objection.  See State v. Renteria, 977 S.W.2d 606, 608 (Tex. Crim. 
App. 1998).  We overrule appellant’s fourth point.
        Having 
overruled appellant’s points, we affirm the trial court’s judgment.
 
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
  
  
PANEL A:   CAYCE, 
C.J.; LIVINGSTON and GARDNER, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b).
 
DELIVERED: June 10, 2004
 


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
See Pucher v. State, No. 2-02-00284-CR, 2003 WL 2006649, at * 1 
(Tex. App.—Fort Worth May 1, 2003, pet. ref’d) (mem. op.) (not designated 
for publication).
3.  
Appellant and Pucher paid cash for the property, except for $58,000 that was 
seller-financed, and paid off the loan in about three weeks. Approximately 
$165,000 of the purchase price for the land came from the sale of a 42-foot 
boat. Appellant and Pucher did not pay off the lien on the boat when they sold 
it, but instead applied all sale proceeds to the Keller property. However, they 
eventually paid off the lien on the boat as well.
4.  
Appellant and Pucher traded in a high-powered Trojan boat for the yacht. The 
purchase price for the yacht was $389,000, and the trade-in value of the Trojan, 
which was encumbered by a $125,777.36 lien, was $155,000.
5.  
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden 
v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); Matson v. State, 
819 S.W.2d 839, 846 (Tex. Crim. App. 1991).
6.  
The items consisted of jewelry; documents relating to: the purchase of the house 
in Hawaii, a trip to England, the construction of a metal building, property 
located at 7709 Misty Ridge North (Pucher’s house), and the purchase of a 
boat; a notebook containing personal notes; seven envelopes of photographs; a 
box of blank checks with the number of the account in which the stolen funds 
were deposited; a manila envelope containing $24,840 in cash; appellant’s and 
Pucher’s passports; and a gray plastic box containing personal records. The 
affidavit accompanying the search warrant, which was incorporated into the 
warrant by reference, alleged the commission of theft of approximately $2.8 
million and the unlawful transfer of the theft proceeds.
7.  
In addition, while appellant’s objections to some of the exhibits were based 
on rule 403, she did not object to all of the exhibits on that ground. Thus, 
much of this complaint is waived. See Tex. R. App. P. 33.1(a); Mosley v. 
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), cert. 
denied, 526 U.S. 1070 (1999).