PUCHER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-224-CR

SANDRA PLUMMER PUCHER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Sandra Plummer Pucher appeals her conviction for conspiracy to commit theft.  
See
 Tex. Penal Code Ann.
 § 15.02 (Vernon 2003), § 31.03 (Vernon Supp. 2004).  In four points, she contends that the evidence is legally insufficient to support the conviction and that the trial court abused its discretion in denying her motion to suppress, admitting 110 of the State’s exhibits into evidence, and overruling her objection to the State’s jury argument.  We affirm.

Legal Sufficiency

In her first point, appellant contends that the evidence is legally insufficient to support her conviction.  Appellant’s husband, Thomas Pucher, stole approximately $2.8 million from Burlington Resources by creating a fake company, which submitted false invoices that were paid by Burlington Resources.
(footnote: 2)  The evidence at trial details his actions, which began in 1994 and continued until Burlington Resources discovered the crime in September 2000.  Appellant and Pucher were married in 1997.

Appellant does not contend that the evidence is insufficient to show that her husband stole the money.  Instead, she contends the evidence is insufficient to prove that she made an agreement with him to steal some of the money.

A person commits criminal conspiracy if, with the intent that a felony be committed, she (1) agrees with one or more persons that one or more of them will engage in conduct that constitutes the offense and (2) one or more of them performs an overt act in furtherance of the agreement.  
Id
.
 § 15.02(a); 
Cantrell v. State
, 75 S.W.3d 503, 508 (Tex. App.—Texarkana 2002, pet. ref’d).  The essential element of a conspiracy is an agreement to commit a crime.  
Cantrell
, 75 S.W.3d at 509.  If the evidence shows there was no actual, positive agreement to commit a crime, it is insufficient to support a conspiracy conviction.  
Walker v. State
, 828 S.W.2d 485, 487 (Tex. App.—Dallas 1992, pet. ref’d).  However, an agreement may be inferred from the acts of the parties.  
Tex. Penal Code Ann.
 § 15.02(b); 
Cantrell
, 75 S.W.3d at 509.  Because a conspiracy is typically clandestine, direct evidence of an agreement is not necessary to support a conviction; circumstantial evidence will suffice.  
Cantrell
, 75 S.W.3d at 509.

The evidence shows that appellant met Pucher in 1994 through her work selling audiovisual equipment to Burlington Resources.  Appellant and Pucher started dating about a year after they met.  During part of the time appellant and Pucher were dating, Pucher lived in a modest duplex, which appellant helped decorate.  He later lived in a modest home before moving in with appellant.  Appellant owned her own home on Eagle Court in Bedford, on which she carried a mortgage. 

Appellant and Pucher became engaged in 1995.  In September 1997, appellant was terminated from her employment and began receiving unemployment compensation.  While she was unemployed, in November 1997, she purchased a home on Norwood Drive in her name for $280,000.  She paid $62,478.16 from her personal bank account to the title company at closing and obtained $224,000 in financing.  At the time, she had only enough money in her bank account to make payments on the home for eight or nine months.  Neither she nor appellant sold the homes they owned.  The balance on appellant’s mortgage on the Eagle Court home was $113,000.  Included with appellant’s loan application was a copy of a lease between her and Pucher for $1,700 per month for the Eagle Court home; however, there is no evidence that Pucher ever lived at the Eagle Court home or that he paid rent to appellant in accordance with the lease.  The evidence does show that Pucher moved into the Norwood home a few days after November 21, 1997, the day of the closing.

While appellant indicated on her mortgage application that she was employed, and the bank’s records indicate it verified her employment as of November 7, 1997, the evidence shows that she received unemployment compensation for that time.  The evidence further shows that appellant told a Tarrant County criminal investigator in October 2000 that she had been unemployed since September 1997. 

After appellant purchased the Norwood home, Pucher deposited $34,400 of the stolen money into her personal bank account on December 1, 1997.  Appellant and Pucher were married December 20, 1997.  On March 2, 1998, Pucher deposited $60,000 of the stolen money into appellant’s bank account.   While appellant and Pucher were married, appellant wrote some checks for payments on the Norwood house from a joint account that she opened with $12,000 of the stolen money given to her by Pucher.  She also made payments from the joint account for loan payments on the Eagle Court home and wrote herself checks for cash.  Appellant and Pucher paid off the loan for the Norwood home in less than two years, making a total of $317,086 in payments from either their joint bank account, Pucher’s own bank account, or the account for Pucher’s fake company.  A forensic investigator who reviewed appellant’s and Pucher’s accounts testified that between October 1997 and August 16, 1999, when the loan on the Norwood home was paid off, he could find no wages deposited in any bank accounts that were used to make house payments.  All payments for the Norwood home, other than the earnest money and down payment for which Pucher reimbursed appellant from the stolen funds, were made with the stolen money.

The evidence further shows that during appellant’s marriage to Pucher, appellant was unemployed, and Pucher never made more than $40,000 a year at his job at Burlington Resources.  However, during the same time, the couple purchased in full the Norwood home, approximately 14 acres of unimproved real property in Keller for $283,689,
(footnote: 3) and a 50-foot yacht.
(footnote: 4)  They also rented a slip and furnished apartment at High Point Marina on Lake Texoma.  In addition, when the police searched the Norwood home, they found approximately $24,840 in cash, which neither appellant nor Pucher appeared surprised about.  The couple also submitted a contract to purchase a 3,471 square foot home in Hawaii for $400,000 cash, with no financing, plus repair costs of $187,465.  The seller never accepted the contract, however.

Appellant contended at trial that she thought Pucher was independently wealthy and she did not know the source of the money they were spending.  Appellant told her son that Pucher had a trust fund.  However, Pucher had told his boss that his wife was wealthy from a prior marriage.  He also told his father that appellant was quite a good salesperson and made about $130,000 per year at her job.

Pucher’s father testified that when he asked appellant if she knew where the money was coming from, she said no, but she indicated to him that she made a lot of money at her job, and he thought that’s where their lifestyle came from.  Pucher’s father also testified that appellant told him she received an inheritance from her aunt.  

Pucher testified that appellant did not know anything about the stolen money, that he did not tell her about it, and that the two did not agree that he would steal the money.  He said that while they were dating and engaged, he bought boats, jet skis, motorcycles, and a recreational vehicle with some of the stolen money and with money that vendors of Burlington Resources paid him on the side to give them business.  However, the evidence shows that the amount of money Pucher stole from Burlington Resources increased significantly after he married appellant.  

Viewing the evidence in the light most favorable to the verdict, and presuming that the jury resolved any conflicting inferences in favor of the prosecution,
(footnote: 5) we hold that the evidence is legally sufficient to support appellant’s conviction.  We overrule appellant’s first point.

In her second point, appellant contends that the trial court abused its discretion by denying her motion to suppress (a) several items
(footnote: 6) seized during the search of the Norwood home because they were not named in the search warrant and (b) items seized during a search of other real property owned by appellant because part of the affidavit accompanying the search warrant incorrectly identified the address of the property.  
See
 
Tex. Code Crim. Proc. Ann.
 arts. 18.01(c)(2), 18.02 (Vernon Supp. 2004).  

The search warrant for the Norwood home authorized the seizure of (a) a computer and related equipment that the officers believed was used to generate the fake invoices and (b) other evidence of the offense, such as bank records.  
See id
. art. 18.02(9), (10).  Although the complained-of items were not named in the search warrant, they were discovered in areas where the police were lawfully present by virtue of the search warrant, and are of a nature that would lead a reasonable person to believe they may be useful as evidence of the crime alleged in the affidavit accompanying the search warrant.  
See Joseph v. State
, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991); 
Zarychta v. State
, 44 S.W.3d 155, 166 (Tex. App.—Houston [14
th
 Dist.] 2001, pet. ref’d), 
cert. denied
, 535 U.S. 1105 (2002); 
State v. Young
, 8 S.W.3d 695, 698-700 (Tex. App.—Fort Worth 1999, no pet.).  Thus, we hold that the trial court did not abuse its discretion in denying appellant’s motion to suppress the evidence found in the Norwood home.

While the last paragraph of the affidavit supporting the search warrant for the other real property incorrectly identifies the address of the property as appellant’s residence, the first paragraph of the affidavit describes the real property with the correct address and a plat description.  Furthermore, the search warrant correctly identifies the property to be searched.  
See Etchieson v. State
, 574 S.W.2d 753, 759 (Tex. Crim. App. 1978) (op. on reh'g) (holding that minor discrepancies in property description will not vitiate search warrant), 
cert. denied
, 440 U.S. 936 (1979); 
see also Ramos v. State
, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996) (stating that adequacy of affidavit to support issuance of search warrant depends on totality of circumstances), 
cert. denied
, 520 U.S. 1198 (1997).  We overrule appellant’s second point.

In her third point, appellant complains about the trial court’s admission of 110 of the State’s exhibits on the ground that they are substantially more prejudicial than probative.  
See
 
Tex. R. Evid.
 403.  Appellant does not contend that all the exhibits are similar or that they are all more prejudicial than probative for the same reason.  Appellant appears to argue that the exhibits are not relevant as circumstantial evidence of her guilt because the other evidence against her is insufficient.  We overrule appellant’s third point as multifarious.
(footnote: 7) 
See Foster v. State
, 101 S.W.3d 490, 499 (Tex. App.—Houston [1
st
 Dist.] 2002, no pet.). 

In her fourth point, appellant contends the trial court erred in overruling her objection to the State’s jury argument that “we [the State] don’t have to prove [an] express agreement, we don’t have to prove a written agreement.”  After appellant objected, the prosecutor clarified his argument by saying that the State did not have to prove a written agreement.  The trial court overruled the objection.  The agreement element of conspiracy may be inferred from the acts of the parties; the State need not introduce direct evidence of the agreement.  
See
 
Tex. Penal Code Ann.
 § 15.02(b); 
Cantrell
, 75 S.W.3d at 508.  Thus, the trial court did not err by overruling appellant’s objection.  
See State v. Renteria
, 977 S.W.2d 606, 608 (Tex. Crim. App. 1998).  We overrule appellant’s fourth point.

Having overruled appellant’s points, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b).

DELIVERED:  June 10, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
 
Pucher v. State
, No. 2-02-00284-CR, 2003 WL 2006649, at * 1 (Tex. App.—Fort Worth May 1, 2003, pet. ref’d) (mem. op.) (not designated for publication).  

3:
Appellant and Pucher paid cash for the property, except for $58,000 that was seller-financed, and paid off the loan in about three weeks.  Approximately $165,000 of the purchase price for the land came from the sale of a 42-foot boat.  Appellant and Pucher did not pay off the lien on the boat when they sold it, but instead applied all sale proceeds to the Keller property.  However, they eventually paid off the lien on the boat as well.

4:
Appellant and Pucher traded in a high-powered Trojan boat for the yacht. The purchase price for the yacht was $389,000, and the trade-in value of the Trojan, which was encumbered by a $125,777.36 lien, was $155,000.

5:
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); 
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  

6:
The items consisted of jewelry; documents relating to:  the purchase of the house in Hawaii, a trip to England, the construction of a metal building, property located at 7709 Misty Ridge North (Pucher’s house), and the purchase of a boat; a notebook containing personal notes; seven envelopes of photographs; a box of blank checks with the number of the account in which the stolen funds were deposited; a manila envelope containing $24,840 in cash; appellant’s and Pucher’s passports; and a gray plastic box containing personal records.  The affidavit accompanying the search warrant, which was incorporated into the warrant by reference, alleged the commission of theft of approximately $2.8 million and the unlawful transfer of the theft proceeds.

7:
In addition, while appellant’s objections to some of the exhibits were based on rule 403, she did not object to all of the exhibits on that ground.  Thus, much of this complaint is waived.  
See
 
Tex. R. App. P.
 33.1(a); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999).