Opinion issued November 21, 2002











     






In The
Court of Appeals
For The
First District of Texas




NO. 01-00-01424-CR




LUFUS FOSTER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 155th District Court
Waller County, Texas
Trial Court Cause No. 98-08-9490




O P I N I O N

          A jury found appellant, Lufus Foster, guilty of possession with intent to deliver
cocaine weighing between 4 and 200 grams and assessed punishment at five years’
confinement. In six points of error appellant contends the trial court erred by: (1)
denying his motion to suppress evidence; (2) denying his motion to suppress
appellant’s statement; (3) admitting evidence for which the State had failed to
establish a proper chain of custody; (4) refusing to rule on certain pretrial motions;
(5) refusing to submit a jury charge of the lawfulness of the police conduct; and (6) 
depriving him of a fair trial. We affirm.
BACKGROUND
          On July 14, 1998, Waller County Sheriff Sergeant Robert Burns stopped a
green Hyundai for traveling 77 miles per hour in a 70 miles per hour traffic zone. 
Ruben Lee was driving the car and appellant was his passenger. Burns approached
the driver’s side window, and appellant immediately leaned over and handed his
identification card to Burns. Although the air conditioner appeared to be on high,
appellant had sweat on his forehead.
          Lee stepped out of the car to have a conversation with Burns. Although Lee
told Burns that he and appellant had been in Galveston all day visiting Lee’s
grandmother, Lee did not know where his own grandmother lived. He told Burns that
he drove around Galveston until he saw a familiar house.
          Burns then spoke with appellant, who told him that the two men had tried to
go to a flea market in Houston, but that the flea market was closed. After that,
appellant said that he and Lee had driven around Houston talking to some girls. 
Appellant also told Burns that he and Lee had not been anywhere else that day. Burns
then asked Lee for consent to search the car, and Lee agreed, signing a voluntary
consent to search form.
          Before searching the car, Burns asked Lee to sit in the rear of his patrol car
because:
I generally ask the people if they would mind sitting in my car, number
one, I don’t have to worry about them getting run over by somebody that
drives off the road. And number two, you don’t have to worry about
somebody sneaking up behind you while you are looking in a vehicle.

          Burns patted Lee down before Lee got in the back of the patrol car. Lee had
a small knife, which Burns took from him. The knife was not illegal, and Burns
planned to return it after the search.
          Burns then explained to appellant that Lee had given permission to search the
car. Burns also asked appellant if he would sit in the back of the patrol car, and
explained that waiting in the back of the patrol car was for appellant’s own safety, as
well as that of the officer. Before appellant got in the patrol car, Burns patted him
down and removed a small knife, which Burns took.
          At the motion to suppress evidence hearing, Burns testified about the initial
encounter with the appellant and Lee as follows:
          Q:      And so you placed Mr. Lee and Mr. Foster in the back of your
patrol car?
 
Burns: Correct.
 
          Q:      Did you handcuff them?  
 
Burns: Nope.
 
Q:Okay. Did you tell them hey, if you change your mind at any time, 
you can stop this search?
 
Burns: Yes.
 
Q:Did you tell them that?
 
Burns: Told them they were not under arrest, and that for their safety
and mine, I was going to ask them if they would sit in the back seat of
my patrol car.
 
Q:And they cooperated?
 
Burns:Yes, voluntarily.

          As Lee and appellant waited in the patrol car, Burns called for a canine unit to
conduct the search. The dog alerted on the driver’s side floorboard, but no narcotics
were found in the car. This, in Burns’s experience, led him to believe that the
narcotics were located in the socks or shoes of the car’s occupants.
          Burns asked if Lee would remove his shoes and socks, which Lee did
voluntarily. There were no drugs in Lee’s shoes or socks. As Lee was taking off his
socks and shoes, Burns noticed that appellant, who was still in the patrol car, was
making furtive gestures down near his feet. When Burns shined his flashlight on
appellant, appellant sat up quickly. Burns opened the door of the police car and
noticed that appellant had his hands down the front of his pants. When appellant
removed his hands from his pants and got out of the car, Burns noticed that there were
two lumps in the front of appellant’s pants that had not been there earlier.
          At this point, there is some dispute about whether or not Burns immediately
began a second pat-down search of appellant. At a pretrial hearing, Burns testified
that he began a second pat-down search when a bag of white powder fell out of
appellant’s shorts. However, after reviewing his police report, Burns testified that the
bag of white powder actually fell out of appellant’s shorts as appellant was getting
out of the car, before Burns began a second pat-down search.
          After the bag fell out of appellant’s shorts, there was a brief altercation between
appellant and Burns, during which a second bag of powder fell out of appellant’s
shorts. Appellant was arrested and taken to the Waller County jail. Once there, he
was searched and a third bag of powder was discovered in appellant’s pants. 
Subsequent testing revealed cocaine weighing approximately 65.66 grams.
 
 
 
ISSUES AND ANALYSIS
1. The Motion to Suppress Evidence
          In point of error one, appellant contends the trial court erred in denying his
motion to suppress evidence. Specifically, he argues Sergeant Burns’s two pat-down
searches were illegal.
          In reviewing the trial court’s ruling on the motion to suppress, we apply a
bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000). We give almost total deference to the trial court’s determination of
historical facts, while we conduct a de novo review of the trial court’s application of
the law to those facts. Id. During a motion to suppress hearing, the trial court is the
sole trier of fact; accordingly, the trial judge may choose to believe or disbelieve all
or any part of a witness’s testimony. See State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000); King v. State, 35 S.W.3d 740, 742 (Tex. App.—Houston [1st Dist.]
2000, no pet.). When, as here, no findings of fact are filed, we must view the
evidence in the light most favorable to the ruling and sustain the decision if it is
correct on any applicable theory of the law. Ross, 32 S.W.3d at 855-56; King, 35
S.W.3d at 742.
          A. Initial pat-down
          Appellant first argues that the initial pat-down search and detention of
appellant in the back of the patrol car were illegal because Burns did not advise
appellant that he did not have to submit to the search at all and he had no information
giving rise to a reasonable suspicion that criminal activity was occurring. However,
Burns testified that he told appellant and Lee that they were not under arrest and that
he asked them to sit in the back of the patrol car for his safety, as well as their own. 
He further testified that they cooperated voluntarily. We have previously held that
it is not unreasonable per se for an officer to request a consent to search after the
completion of a traffic stop. See Spight v. State, 76 S.W.3d 761, 768 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). A search pursuant to voluntary consent
does not require reasonable suspicion. Id. at 770-71. Constitutional prohibitions
against warrantless searches and seizures do not come into play when a person gives
free and voluntary consent to search. Id. at 768. Here, the record supports an
implied finding that appellant’s consent to the initial pat-down search and request to
stay in Burns’s patrol car was given freely and voluntarily.
          B. Second pat-down
          Appellant also argues that because Burns had already conducted his first pat-down search and determined appellant was not carrying any weapons, any search
subsequent to that was no longer a valid search. Specifically, appellant argues that
Burns did not have sufficient probable cause to warrant the second pat-down search,
because the first pat-down search had revealed no weapons.



                    1. Probable cause
          Here, the second pat-down search was not a Terry pat-down for weapons.


 The
second search was a warrantless search based on probable cause developed during the
consensual searches of Lee, appellant, and Lee’s car. Moreover, exigent
circumstances


 existed justifying the second warrantless search.
          A passenger’s mere presence in a car that the police have probable cause to
suspect contains contraband does not, in and of itself, give the police the right to also
search the passenger. See United States v. Di Ri, 332 U.S. 581, 586-87, 68 S. Ct. 222,
224-25 (1948). Probable cause to search a car does not, automatically, confer an
incidental right to search all persons in the car. Id.
          In this case, Sergeant Burns had Lee’s consent to search the car. After the dog
positively alerted on the car,


 Sergeant Burns had developed the following
information, which indicated that narcotics were probably on appellant’s person: (1)
appellant and Lee had given contradictory stories about where they had been that day;
(2) appellant appeared nervous and had sweat on his forehead; (3) Burns, in his
experience, knew that when a dog alerts on a floorboard, the contraband is often
discovered in an occupant’s shoes or socks; (4) no drugs were discovered in Lee’s
shoes or socks; (5) appellant had made furtive gestures toward his feet while Burns
was searching Lee; and (6) Burns noticed two bulges in appellant’s shorts where he
had seen none earlier.
          Under these circumstances, we hold that Burns’s second pat-down search of
appellant was not unreasonable because Burns had developed had probable cause to
search to appellant’s person. 
                    2. Exigent Circumstances
          We turn now to the issue of whether exigent circumstances were present such
that obtaining a warrant was impracticable. See McNairy, 835 S.W.2d at 107. In this
case, Burns was conducting a car search, as well as a search of appellant’s person, on
the side of the road, after a traffic stop. “As in all car-search cases, the ‘ready
mobility’ of an automobile creates a risk that the evidence or contraband will be
permanently lost while a warrant is obtained.” Wyoming v. Houghton, 526 U.S. 295,
304, 119 S. Ct. 1297, 1302 (1999). The same exigency that justifies a warrantless car
search based on probable cause also justifies a search of the car’s occupant, if the
police officer also has probable cause to believe that the contraband is located on the
occupant. Thus, we hold that the second search of appellant was not unreasonable
under either the United States or Texas Constitutions.



          Therefore, the trial court did not err by denying appellant’s motion to suppress
evidence.
          We overrule point of error one.
2. Admissibility of Appellant’s Statement
          In point of error two, appellant contends his written statement should have been
suppressed because it was not freely and voluntarily given. Specifically, appellant
argues his statement was involuntary because: (1) Burns promised that Lee would be
released if appellant gave a statement; (2) Burns woke appellant up to take the
statement; and (3) appellant’s low level of intelligence prevented him from
understanding the statement. We address each contention separately.
          A. Promise to release Lee
          Appellant testified that Burns promised to release Lee in exchange for a
statement. Burns, however, denied making such a promise. The trial court, as the
fact finder, was entitled to believe Burns and disbelieve appellant. See Ross, 32
S.W.3d at 855. 
          B. Appellant awakened to give statement
          Appellant testified that he was asleep when Burns woke him up to take his
statement. However, there is no evidence in the record that appellant was suffering
from sleep deprivation such that he did not understand what he was doing. Lack of
sleep for as long as 16 hours does not, in and of itself, render a confession
involuntary. See Barney v. State, 698 S.W.2d 114, 120 (Tex. Crim. App. 1985).
          C. Appellant’s level of intelligence
          Appellant testified that he is “a child still stuck in a grown body.” To support
his claim that he was unable to understand his statement, he points to Burns’s
testimony that Burns had, at times, to explain the meaning of words used in the
statement. This argument mischaracterizes the following testimony by Burns:
[Defense Counsel]: You have testified that the statement or words that
came out of Mr. Foster’s mouth, but then when you read them back to
him, he didn’t understand the words he used?
 
[Burns]: I would say better way for me to put that would be he did not
recognize some of the words that he had spoken that were then written
down on the paper. He was capable of, of speaking the word, but did
not necessarily recognize them –
 
[Defense Counsel]: He didn’t recognize–
 
[Burns]: in print.
 
[Defense Counsel]: He didn’t recognize them when you spoke them?
 
[Burns]: No, ma’am. He would recognize the, I assume when he spoke
them because they were his words. But on the paper, the word itself, as
I told you, we went along word for word. And when we would come to
a word that he did not recognize, he would ask now, what was that or
what is that?

          Burns’s testimony was not that appellant did not understand the words he used
when he dictated his statement to the officer, but was that appellant could not read the
printed words when his statement was reduced to writing. However, a person’s
illiteracy alone will not necessarily render his statement inadmissible. The Court of
Criminal Appeals has held that there is no requirement that a person be literate before
his statement can be admissible. Westley v. State, 754 S.W.2d 224, 229 (Tex. Crim.
App. 1988) (citing Pete v. State, 501 S.W.2d 683, 685 (Tex. Crim. App. 1973)).
          Accordingly, we overrule point of error two.
3. Chain of Custody
          In point of error three, appellant contends the trial court erred by admitting the
cocaine into evidence because the State did not establish a proper chain of custody. 
It is within the trial judge’s discretion to determine the sufficiency of a predicate, and,
absent an abuse of discretion, we will not reverse the trial court’s judgment. Smith
v. State, 683 S.W.2d 393, 405 (Tex. Crim. App. 1984).
          Burns testified that State’s Exhibit 3 was the cocaine he recovered from
appellant and placed in the narcotics lock box at the Waller County Sheriff’s
Department. Officer Glenn White testified that State’s Exhibit No. 3 was the same
cocaine that he took to the Department of Public Safety’s crime lab for testing. Dottie
Collins testified that Exhibit No. 3 was the cocaine she analyzed.
          Appellant contends that this chain of custody is insufficient because Officer 
White testified that he had no independent recollection of delivering the cocaine to
the lab or writing the report from which he testified. We disagree.
          If a substance is properly identified, most questions concerning care and
custody go to the weight to be given the evidence, not to its admissibility, unless there
is a showing that the substance was tampered with or changed. Gallegos v. State, 776
S.W.2d 312, 315 (Tex. App.—Houston [1st Dist.] 1989, no pet.). When the State
shows the beginning and the end of the chain of custody, any gaps in between go to
the weight rather than admissibility, particularly if the chain of custody through to the 
laboratory is shown. Id. at 315-16.
          In this case, the State showed a complete chain of custody from seizure to the
lab. As there was no evidence of tampering, any gaps caused by Officer White’s
testimony went to the weight of the evidence, not its admissibility.
          We overrule point of error three.
4. Pretrial motions
          In point of error four, appellant contends that the trial court erred by refusing
to rule before trial on his motions regarding the State’s intent to introduce extraneous-offense evidence. Appellant argues that “[t]his denial of the court to conduct these
hearings before trial denied defendant the ability to make an informed assessment of
whether or not the defendant could testify in his own behalf during guilt or
innocence.” Appellant’s argument seems to be that, had he known that he would not
be impeached with extraneous offenses, he might have chosen to testify.
          Appellant cites no authority for requiring the trial court to rule on the
admissibility of extraneous offenses pretrial. Tex. R. App. P. 38.1 Accordingly, we 
overrule point of error four.
5. Jury Charge
          In point of error five, appellant contends the trial court erred by refusing to
submit a jury charge on the legality of the second pat-down search of appellant. If
evidence admitted at trial raises any doubts as to the legality of how it was obtained,
the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence
was obtained illegally, then the jury must disregard the evidence. Tex.Code Crim.
Proc. Ann. art. 38.23(a)(Vernon Supp. 2002). When there is a factual dispute as to
how evidence was obtained, the trial court is statutorily required to give an article
38.23 instruction in the jury charge. Wesbrook v. State, 29 S.W.3d 103, 121 (Tex.
Crim. App. 2000); see also Malik v. State, 953 S.W.2d 234, 241 (Tex. Crim. App.
1997).
          Appellant argues that a 38.23 instruction was required because there was a
factual dispute about whether the cocaine fell out of appellant’s pants before or after
Burns began the second pat-down search. However, we have already held that, even
if Burns had already begun the second pat-down search when the cocaine fell, he had
the requisite level of probable cause necessary to validate such a search. Therefore,
the resolution of the alleged factual dispute would not have decided whether the search 
was lawful. Accordingly, the trial court did not err by refusing the requested 38.23
instruction.
          We overrule point of error five.
6. Unfair Trial
          In point of error six, appellant attacks three separate rulings, or comments, made
by the trial court during the trial: (1) the denial of an instruction to disregard
unrecorded statements made while appellant was in custody; (2) the introduction, at
punishment, of the forfeiture of $17,000, by another person unrelated to this case; and
(3) repeated instructions to defense counsel, both before and outside the presence of
the jury, on the proper method of cross-examining a witness with prior inconsistent
statements. Appellant summarily concludes that all three alleged errors violated
article 2.03(b) of the Texas Code of Criminal Procedure by denying appellant the right
to a fair trial. However, we decline to address this point of error because it is
multifarious and inadequately briefed.
          A multifarious point is one that embraces more than one specific ground. Stults
v. State, 23 S.W.2d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d). By
combining more than one contention in a single point of error, an appellant risks
rejection on the ground that nothing will be presented for review. Cuevas v. State, 742
S.W.2d 331, 336 n. 4 (Tex. Crim. App. 1987). However, an appellate court may
address a multifarious point that is sufficiently developed in the brief.
          In this case, appellant’s brief is not sufficiently developed because it provides
no argument or authority to show why the actions of the trial court were erroneous.
Tex. R. App. P. 38.1. Instead, appellant merely quotes the language of article 2.03(b)
and concludes that the presumption of innocence was impeded by the conduct of the
trial court. Therefore, we hold this point of error is inadequately briefed, and, as such,
is waived. See Lockett v. State, 16 S.W.3d 504, 505 n.2 (Tex. App.–Houston [1st
Dist.] 2000, pet. ref’d); see also Tex. R. App. P. 38.1(h) 
          We overrule point of error six.
CONCLUSION
          We affirm the trial court’s judgment.
 
                                                             Sherry Radack
                                                             Justice
 
 
Panel consists of Justices Nuchia, Jennings, and Radack.
 
Publish. Tex. R. App. P. 47.