Affirmed and Memorandum Opinion filed September 1, 2005









Affirmed
and Memorandum Opinion filed September 1, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00155-CR

____________

 

JAMES McCANN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause No. 922,290

 



 

M E M O R A N D U M   O P I N I O
N

Appellant James McCann appeals his conviction for murder of
his estranged wife, Hattie Faye McCann. 
In two issues, he contends that the trial court erred in admitting
evidence of an extraneous offense and forensic DNA evidence.  We affirm.








Factual and Procedural Background

Appellant
and Hattie Faye McCann were married in 1951. 
They have an adopted son, Kenneth McCann. Prior to their marriage Hattie
was permanently injured and always had difficulty moving around.  

In 1999,
appellant and Hattie separated. 
Appellant moved out of the house and began dating Shirley Shults
McCann.  Appellant claims that he had
asked Hattie for a divorce and, believing she had filed the paperwork, married
Shirley in 2000.  However, even after his
marriage to Shirley, appellant continued to support Hattie financially, shared
his retirement checks with her, and fixed things around her house.  This relationship between Hattie and
appellant continued until August of 2002 when appellant and Shirley discovered
that Hattie had not, in fact, filed the divorce paperwork.  On Wednesday, August 14, 2002, appellant
arranged to meet with Hattie to talk about the paperwork.

On
Friday, August 16, 2002, in the early evening, Hattie=s body was discovered in her home by
police officers called to check on her welfare. The Crime Scene officer
estimated that she had been dead approximately twenty-four hours.  Because there was no apparent indication of
violence, the police originally classified it as a natural death, arranged for
transport of the body, and left the scene. However, an autopsy examination
revealed that Hattie had not died of natural causes, but instead had been
strangled.  She also had bruises on her
face and head and broken fingernails, indicating she had been attacked and had
fought her attacker.  After this
discovery, the case was assigned to Officer Harris in the homicide division.








Officer
Harris contacted appellant and requested that appellant meet him at Hattie=s house.  After some questions regarding the condition
of the house, appellant and Shirley agreed to go downtown with Officer Harris
to have their fingerprints taken for elimination purposes.  Officer Harris interviewed appellant
separately on tape.  Appellant denied
having anything to do with Hattie=s death.  Appellant agreed to be polygraphed[1]
the next day.  After being told that his
polygraph indicated he was being untruthful, appellant broke down and requested
to be allowed to tell Officer Harris the truth. 
Harris returned to the office, read appellant his rights, and videotaped
a confession.  In the confession,
appellant denied ever hurting Hattie before and then admitted that he put a
pillow over Hattie=s face, but claimed that he was just trying to scare her, not
kill her.[2]


At trial
there was no testimony in the State=s case-in-chief that appellant had
ever been violent with Hattie, although it was clear that their marriage was
not happy.  Both officers testified that
appellant was helpful and intelligent during the interviews.  On direct, his son, Kenneth, testified that his
father was very intelligent and picked up new skills easily.  Shirley, testifying for the defense,
confirmed the financial relationship between appellant and Hattie.  She thought that appellant felt sorry for
Hattie.  She also testified that
appellant, although intelligent, submitted easily to authority and was not
particularly strong-willed or forceful. 
As a rebuttal witness, the State recalled Kenneth to the stand.  Kenneth testified that he had witnessed his
father hit his mother in 1975 when Kenneth was about four years old.  

The jury
found appellant guilty of murder, sentenced him to eight years in prison, and
assessed a $10,000 fine.  This appeal
followed.








Analysis

Admission of Extraneous Offense
Evidence

In his first issue, appellant argues evidence that he
hit Hattie in 1975 was inadmissible because the offense was too remote in time
and because it constituted evidence of character conformity prohibited by Rule
404(b).[3]  The trial court admitted the evidence,
stating,

I find that the probative value outweighs any harmful
effect, given the B or outweighs any unfair prejudice, given the importance of
the relationship of the parties and the overall image and impression that has
been conveyed throughout the trial in regard to the relationship of the parties
and the defendant=s demeanor [and] attitude. . . .  Your objection is overruled.   

The State argues the
trial court=s ruling is correct because the
extraneous offense evidence rebuts the defense theories that (1) appellant
always cared for and would never hurt Hattie and (2) appellant lacked
self-determination and willpower and was coerced into giving a false confession.  Hudson v. State, 112 S.W.3d 794, 801
(Tex. App.CHouston [14th Dist.]  2003, pet. ref=d) (AIt is well settled that extraneous
offense and prior bad acts evidence [are] admissible to rebut a defensive
theory.@).

We
review a trial court=s decision to admit evidence under an abuse of discretion
standard.  Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997).  As
long as it is within the zone of disagreement, we will uphold the trial court=s ruling.  Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1990). 








We need
not decide whether the trial court abused its discretion in admitting the
extraneous offense evidence, because even assuming the trial court erred, any
such error was harmless.  Texas Rule of
Appellate Procedure 44.2(b) provides that a nonconstitutional error is
disregarded unless it affects substantial rights.  Motilla v. State, 78 S.W.3d 352, 355
(Tex. Crim. App. 2002). A[S]ubstantial rights are not affected by the erroneous
admission of evidence if the appellate court, after examining the record as a
whole, has fair assurance that the error did not influence the jury, or had but
a slight effect.@  Id. (internal
quotation marks omitted).  When we assess
whether the error adversely affected the jury=s consideration, we review all of the
evidence in the record, the evidence supporting the verdict, the character of
the alleged error, and the relationship of the error to other evidence in the
case.  Id.  Also a factor is whether the State emphasized
the error.  Id. at 356.  A[A]n appellate court should consider
overwhelming evidence of guilt, but that . . . should be only one factor in the
analysis.@ 
Id. at 357.

In this
case, there was a significant amount of evidence pointing to appellant.  His DNA was found under Hattie=s fingernails.  He had recently learned that she had
apparently never filed the divorce papers he had relied on in remarrying and,
only a day before Hattie=s death, appellant had made plans to meet with her to discuss
the divorce papers.  Although he later
attempted to retract it, he confessed to killing Hattie.  Further, the State never mentioned the
extraneous offense even inferentially in its closing argument.  See Cobb v. State, 85 S.W.3d 258, 272
(Tex. Crim. App. 2002) (finding error harmless in part because  neither side used improper evidence in
closing).  Finally, the trial court
instructed the jury not to consider the extraneous offense evidence for
character conformity purposes. 
Generally, we presume the jury follows the trial court=s instructions and that a limiting
instruction cures any harm.  Moore v.
State, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994).  Given the weight of the evidence against him,
the lack of emphasis in closing argument, and the trial court=s limiting instruction, we cannot
find that evidence of an incident twenty-five years ago would have influenced
the jury more than slightly if at all. 
We therefore hold that error, if any, in admitting extraneous offense
evidence was harmless.  Appellant=s first issue is overruled. 

 








DNA Testimony

In
appellant=s second issue, he challenges the
admission of the DNA evidence because he claims the State failed to prove chain
of custody.  A trial court=s ruling on the sufficiency of an
evidentiary predicate is reviewed under an abuse of discretion standard.  Smith v. State, 683 S.W.2d 393, 405
(Tex. Crim. App. 1984); Foster v. State, 101 S.W.3d 490, 498 (Tex. App.CHouston [1st Dist.] 2002, no
pet.).  Absent a showing of tampering or
alteration, objections concerning care and custody go to the weight of the
evidence rather than admissibility.  Foster,
101 S.W.3d at 498.  ATo support the admission of evidence,
the State must prove only the beginning and end of the chain of custody.@ 
Reed v. State, 158 S.W.3d 44, 52 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).

Appellant
argues that there are breaks in the chain of custody.  Specifically he points to the fact that the
DNA samples from Hattie=s fingernails were delivered to one freezer unit at the
Houston Police Department, but retrieved from another.  Additionally, he was not given an opportunity
to cross-examine the person who physically transferred his DNA sample to the
Houston Police Department.  Lastly, he
questions how the envelopes containing the fingernail scrapings and the box
containing the buccal swab ended up in the same large envelope for transport to
the private DNA laboratory.  








At
trial, the State offered testimony from the medical examiner who supervised the
collection of the evidence from Hattie. 
She positively identified the packaging, the bar code,  and her signature on the seal of the
envelope.  Additionally, the investigator
who collected the buccal swab from appellant identified the box used to store
the swab from his signature and identifying numbers.  Finally, the analyst from the forensic DNA
lab testified that the envelopes and box were sealed and bore no evidence of
tampering when they received them for testing. 
AThe State is not required to provide
a moment-by-moment account of the whereabouts of evidence from the instant it
is seized until it is introduced at trial.@ 
Id.  Since there is no
evidence of tampering, and both beginning and end of the chain are established,
we find that the trial court properly admitted the DNA evidence.  Accordingly, appellant=s second issue is overruled.

Having overruled both of appellant=s issues, we
affirm the trial court=s judgment.

 

 

 

 

 

/s/        Leslie
Brock Yates

Justice

 

Judgment rendered and Memorandum
Opinion filed September 1, 2005.

Panel consists of Justices Yates,
Anderson, and Hudson.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  The fact that
the second interview was a polygraph was withheld from the jury, who was told
only that appellant had a second interview with a different interviewer.





[2]  Before trial,
appellant moved for the suppression of his video-taped statements on the theories
that his confession was involuntary, the product of an illegal arrest, and in
violation of his constitutional rights. 
The trial court denied the motion. 
At trial, appellant renewed his motion to suppress the statement.  Again, the court found that the statement was
voluntary and denied the motion. 
Although in his confession appellant claimed that the murder was an
accident, he did not argue that theory at trial.  He argued instead that he had not committed
the act at all.  He urged the jury to discount
the confession as the product of a weak will and unfair interrogation
techniques.





[3]  Appellant also
argues he was given insufficient notice under Rule 404(b) of the State=s intent to introduce the extraneous offense.  However, the extraneous offense evidence was
introduced in rebuttal, and Rule 404(b) requires notice be Agiven in advance of trial of intent to introduce in
the State=s case-in-chief such evidence.@  Tex. R. Evid. 404(b) (emphasis
added).  Thus, appellant was not entitled
to any notice.  Herring v. State,
752 S.W.2d 169, 172 (Tex. App.CHouston [1st Dist.]) (ARule
404(b) does not require notice of the State=s intent
to use [an] extraneous offense in rebuttal.@), remanded
on other grounds, 758 S.W.2d 283 (Tex. Crim. App. 1988).